## DROSSOS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. January 3, 1927.)

No. 7147.

**1. Prostitution ⟨key⟩1—No crime is committed unless interstate transportation of female was planned and made with immoral purpose (Comp. St. § 8813).**

No crime is committed, under Act June 25, 1910 (Comp. St. § 8813), unless interstate transportation of female was planned and made with immoral purpose, regardless of what occurs thereafter, since prostitution and debauchery alone and unconnected with interstate commerce are beyond federal power.

**2. Prostitution ⟨key⟩4—Intent to transport female in interstate commerce for immoral purposes must be proved to jury beyond reasonable doubt (Comp. St. § 8813).**

Intent to transport female in° interstate commerce in violation of Act June 25, 1910 (Comp. St. § 8813), must be proved as fact to satisfaction of jury beyond reasonable doubt, and may be inferred from circumstances, but cannot be determined by court.

**3. Prostitution ⟨key⟩1—Refusal to instruct acquittal, if accused intended in good faith to marry a married woman taken to another state before cohabiting with her, held error (Comp. St. § 8813).**

In prosecution under Act June 25, 1910 (Comp. St. § 8813), for transporting married woman in interstate commerce for immoral purposes, refusal to instruct acquittal, if accused believed he could marry woman in Montana and intended to do so before cohabiting with her, held error.

**4. Prostitution ⟨key⟩1— Instruction that accused must have had immoral intent when he secured tickets for transportation of woman in interstate commerce held correct (Comp. St. § 8813).**

Instruction that, in order to find accused guilty of transporting woman in interstate commerce for immoral purposes, under Act June 25, 1910 (Comp. St. § 8813), he must have had immoral purpose when he secured railroad tickets, held correct.

**5. Criminal law ⟨key⟩763, 764(10)—Instruction that accused transported woman in interstate commerce for immoral purposes, though he intended to marry her, held erroneous, as taking question of intent from jury (Comp. St. § 8813).**

Instruction that accused was guilty of transporting woman in interstate commerce for immoral purposes, in violation of Act June 25, 1910 (Comp. St. § 8813), if accused, knowing her to be married woman, intended on reaching another state to go through form of marriage with her, even if he believed he could legally marry her in such state, held erroneous, as taking from jury question of his immoral purpose.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

16 F.(2d)—53

Harry Drossos was convicted of transporting a female in interstate commerce for purpose of prostitution and debauchery, and he brings error. Reversed and remanded.

F. W. James, of Salt Lake City, Utah (John D. Rice, of Salt Lake City, Utah, on the brief), for plaintiff in error.

Edward M. Morrissey, Asst. U. S. Atty., of Salt Lake City, Utah (Charles M. Morris, U. S. Atty., and J. K. Smith, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for the United States.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

LEWIS, Circuit Judge. Plaintiff in error was convicted for violation of the Act of June 25, 1910 (36 Stat. 825; Comp. Stat. § 8813), for that he procured railroad tickets from the City of Salt Lake, Utah, to the City of Anaconda, Montana, which tickets were to be used and were used by Mrs. Panagoula Georgopoulos (and himself) in going in interstate commerce from Salt Lake City to Anaconda for the purpose of prostitution and debauchery.

Exceptions were saved to instructions given by the court and to the refusal of the court to give those requested by the defendant; and the action of the court in those respects is assigned as error. The evidence in the case is brief, and that part of it on the point to which the instructions given and those denied had reference and were bottomed is summarized thus: Mrs. Georgopoulos resided in Salt Lake City with her husband, he was abusive of her and their three children and his assaults on her were severe, she knew Drossos, he had lived with the Georgopoulos family for awhile, on the morning of June 23, 1923, the woman's husband told her that if she was in the house when he returned he would kill her, she was afraid and left the house with one of her children, she met the defendant and told him her troubles, he advised her to go back home but she told him she intended to kill herself and her little girl, whom she had with her, she wanted him to take her away and said if he would do so she would marry him, she said they would go to Butte, Montana, where they could get married, he bought the tickets and they went together from Salt Lake City to Butte, where they remained four or five days, the little girl was with them, they went from Butte to Anaconda, arriving at Anaconda he went to the court house to get a marriage license, the clerk told him to see the county attorney, he talked to the county attorney, who told him he could not get a marriage license

until the woman was divorced, that they could live in the same house but he could not sleep with the woman, the county attorney gave him a written statement, in which it was stated that the attorney had investigated the case and that in event of any trouble he, the attorney, should be notified. Up to this time there is no evidence or circumstantial proof tending to show sexual relations. The proof is to the contrary. After the interview with the county attorney the defendant rented a three-room house which was occupied by him, the woman and the little girl. While living in the three-room house at Anaconda the woman was known as Mrs. Drossos. The defendant testified that when he left Salt Lake City he thought that by going to Montana he could marry the woman, that it was all right to go there and get a license and get married.

[1, 2] The statute makes intent and purpose an element of the crime. If the interstate journey was planned and made with no immoral purpose at the time no crime was committed, no matter what may have occurred thereafter. It is the immoral purpose which renders the interstate commerce criminal. In enacting the statute Congress was regulating interstate commerce. The prostitution, debauchery, etc., named in the statute are beyond federal power when standing alone and unconnected with interstate commerce. Gillette v. United States (C. C. A.) 236 F. 215; Biggerstaff v. United States (C. C. A.) 260 F. 926; Sloan v. United States (C. C. A.) 287 F. 91. The intent and purpose is a fact and must be established by the proof to the satisfaction of the jury beyond a reasonable doubt; and being an element of the offense itself its existence or nonexistence must be determined by the jury and not by the court. It may be inferred from circumstances. But an immoral purpose first conceived at the end of the journey is not sufficient.

[3-5] Defendant's counsel requested the court to instruct the jury that if defendant believed he could marry the woman in the state of Montana and intended to do so before cohabiting with her, the verdict should be not guilty. The request was denied. The court properly instructed the jury that in order to find defendant guilty they must believe from the evidence that he had the immoral purpose charged in the indictment at the time he secured the tickets, that if he had the immoral purpose and intent at that time he was guilty; (and the court continued) "and this is true even if at the same time and in association with such immoral purpose the defendant knowing she was a married woman intended upon reaching the state of Montana to go through a form of marriage with her, and even if he actually believed he could legally marry her in Montana. The reason the intention of going through a form of marriage with this woman, if the defendant had such intention, constitutes no defense is that it is elementary law in this country that a woman having a living husband cannot legally marry another man." We think it was error to deny the defendant's request and to give to the jury that part of the instruction quoted above. This action of the court took from the jury the issue of fact as to what was the purpose and intention of the defendant, whether in procuring the tickets he had the immoral purpose denounced by the statute as an element of the crime itself. An intent to defraud is an element of the offense defined by section 215 of the Criminal Code (Comp. St. § 10385), and it is for the jury to say on the trial of a case charging that offense whether the intent has been established as a fact. In Hibbard v. United States (C. C. A.) 172 F. 66, 18 Ann. Cas. 1040, the jury was instructed that "the law presumes that every man intends the natural, legitimate and necessary consequences of his acts. * * * The intent to injure or defraud may be presumed upon an unlawful act which results in loss or injury, if proved to have been knowingly committed." This was held to be error. It was said that the instruction enunciated a sound principle of law but it was not applicable to the case; and "the accused, however, is entitled to the benefits of the presumption of innocence and good faith, created by the law in his favor, and to have the jury instructed accordingly, in terms which involve no doubt of their meaning, so that the question of intent is thus presented, as an issue of fact alone." Rudd v. United States (C. C. A.) 173 F. 912, was a prosecution under section 215 of the Criminal Code. For the purpose of defrauding those who might be induced to purchase the defendant's device, circulars and other communications sent through the mails contained representations contrary to well known fundamental physical laws. The trial court impressed the jury with the idea that no one with the slightest degree of intelligence above insanity could believe that the device was practicable. The defense was that the accused honestly believed in its efficiency and that what he did was without intent to defraud. This court on that subject said:

"Whether conduct which is made the subject of a criminal charge results from a credulous self-deception, or, on the other hand, evinces a design to defraud the public, is a question for the determination of the jury;

and it is none the less so, though the truth of the matter may be clear to most intelligent minds."

On the question under consideration, section 8813, Comp. Stat., and section 215 of the Criminal Code are the same, each makes intent an element of the offense defined. That intent must be established as a fact in the case; and whether it is established is an issue for the jury. A claim that there was not the requisite intent and purpose to constitute the crime may seem absurd to the court on the facts of the case, but it is not for the court to decide the point; and the jury should be left free to determine that issue, guided in its inquiry by proper instructions. Clearly, defendant was not guilty of the charge, if before going to Montana he had no intention of having sexual relations with the woman unless and until they might be lawfully married. In the end she was divorced and became the defendant's wife.

Reversed and remanded.