## GHADIALI v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. January 31, 1927.)

No. 4863.

**1. Criminal law ⬥⬥984—Sentence, after conviction on many counts, authorized by any one of them, will be sustained, if one count is sufficient.**

Where sentence, after conviction on many counts, does not exceed that which might have been imposed on any one count, it will be sustained, if one count is sufficient.

**2. Prostitution ⬥⬥1—Girl, as secretary, may be transported in interstate commerce without violation of White Slave Traffic Act, in absence of purpose to have sexual intercourse (Comp. St. § 8813).**

One employing a girl as secretary and transporting her in interstate commerce does not violate Comp. St. § 8813, unless his transportation is also for the purpose of having sexual intercourse with her.

**3. Prostitution ⬥⬥4—Evidence held to sustain conviction under White Slave Traffic Act (Comp. St. §§ 8812–8819).**

Evidence held to sustain conviction, under White Slave Traffic Act (Comp. St. §§ 8812–8819), for transportation of girl in interstate commerce for purpose of prostitution.

**4. Criminal law ⬥⬥1159(2)—Jury's finding of guilt is conclusive, if there is any evidence on which rational minds might arrive at like conclusion.**

Circuit Court of Appeals cannot reverse jury's finding of guilt, if there is any evidence on which rational minds might arrive at a like conclusion.

**5. Criminal law ⬥⬥1159(2)—Circuit Court of Appeals does not weigh evidence in criminal case.**

On appeal in criminal prosecution, the Circuit Court of Appeals does not weigh evidence.

**6. Prostitution ⬥⬥4—Uncorroborated statement of girl may be sufficient to establish sexual relation, in prosecution under White Slave Traffic Act (Comp. St. §§ 8812–8819).**

In prosecution for violation of White Slave Traffic Act (Comp. St. §§ 8812–8819), uncorroborated statement of girl transported, if believed, may be sufficient to establish sexual relation.

**7. Prostitution ⬥⬥4—In prosecution under White Slave Traffic Act, evidence of statements by defendant that he was hypnotist and mesmerist held admissible (Comp. St. §§ 8812–8819).**

In prosecution for violation of White Slave Traffic Act (Comp. St. §§ 8812–8819), it was not error to permit witness to testify that defendant, during a class lecture, had made the statement that he was a master hypnotist and mesmerist, in view of defendant's own admissions on examination.

*Rehearing denied 47 S. Ct. —, 71 L. Ed. —.

**8. Criminal law ⬥⬥1169(1)—Admission of letters written by defendant held not prejudicial error, contents being immaterial.**

Permitting witness to identify two letters received from defendant, and to admit such letters in evidence, was not prejudicial where contents were immaterial.

**9. Prostitution ⬥⬥4—In White Slave prosecution, testimony that witness had telegram from sheriff, saying girl transported was contented, held inadmissible (White Slave Traffic Act [Comp. St. §§ 8812–8819]).**

In prosecution for violation of White Slave Traffic Act (Comp. St. §§ 8812–8819), exclusion of testimony of witness for defendant that he had received telegram from sheriff to the effect that he had an interview with the girl transported, and that she was satisfied and contented, held not error.

**10. Criminal law ⬥⬥683(1)—In White Slave prosecution, cross-examination of witness concerning instructions by defendant to secure women held properly permitted, where he denied statements (Comp. St. §§ 8812–8819).**

In prosecution for violation of White Slave Traffic Act (Comp. St. §§ 8812–8819), where defendant denied conversation with particular witness, disclosing his attitude toward women, it was not error to permit witness on rebuttal to be asked specifically if defendant had not said to her that she should assist her "husband in getting other women, especially young women; that that was what he needed."

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Dinshah P. Ghadiali was convicted of violating the White Slave Traffic Act, and he brings error. Affirmed.

Plaintiff in error was charged with violating the White Slave Traffic Act of June 25, 1910 (C. S. §§ 8812–8819), count 1, transporting a named girl in interstate commerce from Portland, Or., to Malaga, N. J., on June 23, 1924, for the purpose of prostitution, etc. The second count charges he purchased a ticket, and the third in aiding, inducing, etc., the same girl. Counts 4, 5, and 6 are identical, except the transportation is from Malaga, N. J., to Portland, Or., on or about the 19th day of April, 1925. From a conviction on all counts, and judgment and sentence of five years in the penitentiary, and the payment of a $5,000 fine, the defendant by writ of error seeks reversal.

At the conclusion of all the testimony, defendant moved for a directed verdict of not guilty upon all of the counts, which was denied, and exception noted. In assignments 1 to 6, error is predicated on denial of the motion upon the ground of insufficiency of the evidence as to each count; (7) that er-

ror was committed in permitting witness Darce to state over defendant's objection that "during a class lecture Col. Dinshah made the statement that he was a master hypnotist and mesmerist before the entire class"; (8) erred in permitting witness Saunders to identify two letters received from the defendant and in admitting them in evidence; (9) erred in declining testimony of witness Meyers, on behalf of the defendant, that he had received a telegram from the sheriff at Woodbury, N. J., to the effect that he had an interview with the girl, and that she was satisfied and contented, and that his office had been unable to find anything criminal in the relation of the defendant and the girl; (10) erred in permitting Mrs. Darce, for the government, on rebuttal, to answer this question, "I will ask you whether or not, at that time and place, the defendant, among other things, made the following statement to you relative to your husband: * * * That you should assist your husband in getting other women, especially young women; that that is what he needed, or words to that effect?" Answer: "Yes; he did tell me these very words, or words to that effect." A further error is claimed, but is not discussed in the brief or at bar, and will not be considered.

John J. Beckman, of Portland, Or., George Olson, of Seattle, Wash., and Thomas R. Robinson, of New Haven, Conn., for plaintiff in error.

George Neuner, U. S. Atty., and J. O. Stearns, Jr., Asst. U. S. Atty., both of Portland, Or.

Before GILBERT and RUDKIN, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge (after stating the facts as above). [1] Errors 1 to 6, inclusive, may be disposed of together. There was but one sentence on all counts. It was a permissible sentence upon each count. Where the sentence does not exceed that which may be imposed on one count, even though conviction be had on many counts, if one count is sufficient, the sentence is right. See Koth v. United States (C. C. A.) 16 F. (2d) 59; Kuehn v. United States (C. C. A.) 8 F.(2d) 265; Wetzel v. United States (C. C. A.) 233 F. 984.

[2] Any person knowingly transporting in interstate commerce any girl for the purpose of prostitution, etc., shall be punished. Section 8813, C. S. The defendant had a right to employ this girl, shown to be 19 years old, as his secretary. He had a right to cause her to be transported in interstate commerce in the discharge of her secretarial duties without transgressing the provisions of the law; but if, in addition to the secretarial duties, it was also his purpose to have sexual intercourse with her, and, entertaining such purpose, transported her in interstate commerce, he would be guilty. It was lawful to transport her in interstate commerce as his secretary, but unlawful to have her as his mistress as well. Van Pelt v. U. S. (C. C. A.) 240 F. 346, L. R. A. 1917E, 1135; Sloan v. United States (C. C. A.) 287 F. 91.

[3, 4] The issue of fact was fairly submitted to the jury, since no exception appears in the record to the court's instructions. The jury had before it all of the witnesses, could observe their demeanor, the reasonableness of the story, the opportunity of the witnesses for knowing the things about which they testified, the interest or lack of interest in the result of the trial, and all other disclosed circumstances bearing upon the credibility of the witnesses, and could determine where the truth in the case lay, and, if there is any evidence upon which rational minds might arrive at a like conclusion, this court cannot reverse the finding. There is substantial testimony in the case as to sexual relation between the defendant and the girl. This relation, as stated by the girl, began in September, 1924, at Wildwood, N. J., and carried on intermittently until she left his employ at Portland in April, 1925.

Referring to count 4, the trip from Malaga, N. J., to Portland, where the girl was taken from the defendant by her relatives: At Malaga, N. J., the defendant engaged a drawing room on a Pullman, obtained two tickets, and he and the girl traveled in the drawing room from Malaga, N. J., to Portland. En route, she testified that he had sexual intercourse with her twice between Chicago and Los Angeles, and once between Los Angeles and Portland. The defendant denied any sexual relation, admitted he purchased the tickets, denied that he induced the girl to accompany him on the trip, but that she desired to come, and he brought her as an accommodation to her, and on the request of her aunt, for the purpose of seeing her relatives. The girl testified that, during the time that she was in his employ, he exercised over her an influence which she could not throw off, and that she desired to return to her relatives at Portland.

In considering the motive and purpose of the defendant, the jury had a right to take into consideration the circumstances of em-

ployment and the conditions of the contract, the limitation of the liberties and freedom of action accorded to the girl, the supervision exercised over her at all times, and influence, if any, exerted, as shown by the testimony, the vaginal examination made by the defendant, and the purpose, as given a few days before the Wildwood act ·charged by the girl, and determine whether one of the purposes of the transportation, when it was concluded that she was to accompany him on this trip, was to continue that relation to him as his mistress, in addition to that of secretary, if that relation had been established by the· testimony, and if the jury believed the testimony of the girl of the sexual relation in New Jersey and en route, it had a right to conclude that one purpose of the transportation was for. the purpose condemned by the White Slave Act, supra.

[5, 6] This court does not weigh the evidence in a proceeding of this character, and the uncorroborated statement of the girl, if believed, is sufficient to establish sexual relation. Caminetti v. United States, 242 U. S. 470, 495, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168. The girl testified that she became pregnant from intercourse with the defendant, and that he had produced an abortion. Medical testimony shows that an examination of the genital organs of the girl disclosed that the virgin membrane had been lacerated, "the opening of the womb had been dilated," "the neck of the womb had been subjected to stretching," and revealed a "stellate laceration"— "a star-shaped scar—at the opening of the cervix." There is substantial testimony, at least as to count 4, to support the verdict. This disposes of errors 1 to 6, inclusive.

[7] There was no error in permitting the witness Darce to say that, during a class lecture, Dinshah made the statement that he was a master hypnotist and a mesmerist. The defendant himself, on cross-examination, stated in answer to two questions: "I am a trained hypnotist." "I am a mesmerist, well known." Mrs. Darce's testimony was competent, in view of the testimony of the girl, who said, among other things: "I had no will power of my own, and somehow or other, whenever I had the desire to go away, I felt something that was drawing me back. I did not have any will power to act and stand on my own feet. All my personality was gone. I felt a weak feeling, as if I had no control over my movements. Somebody else was controlling me." Again, on cross-examination, she said: "I was under some kind of a spell coming on the train. Before I left, Col. Dinshah promised me that I could come to see my people. Then, as the time drew close to come to Portland, he said I could not, and I was under some trance. I had no will power of my own; something held me back." Under the theory of the prosecution, the defendant exercised an influence over the girl, which, in effect, if not in fact, amounted to mesmeric control.

[8] No prejudicial error was committed in permitting witness Saunders to identify two letters written by the defendant, nor in admission of these letters. Wide latitude was indulged both sides, without objection, in the introduction of the testimony. The letters could well have been excluded. One letter merely inclosed three copies of affidavits to be signed by Saunders and returned to the defendant, and the other was in reply to an inquiry by Saunders for an interview and appointed a time for the interview.

[9] The testimony of the witness Meyers under the ninth assignment was clearly inadmissible. There is no apparent theory upon which it could have been received for any purpose.

[10] As to the assigned error 10: Mrs. Darce, in chief, testified without objection concerning the subject-matter of a conversation between herself and the defendant, in which the defendant's view and attitude toward women was stated. On direct examination the defendant denied the conversation as related by Mrs. Darce, and on cross-examination was asked specifically if he did not make the statement to Mrs. Darce "that you should· assist your husband in getting other women, especially young women; that that is what he needed." The objection was made that it had been gone into by the government in chief, and there was no reason why it should be repeated on rebuttal. The specific question was asked the defendant, and it was denied. The court permitted the answer: "Yes; he did tell me these very words, or words ·to that effect." In this the defendant was not prejudiced.

The judgment is affirmed.·