## SIMON v. UNITED STATES.

### No. 5263.

Circuit Court of Appeals, Fourth Circuit.

Oct. 18, 1944.

Ralph A. Glasgow, of Roanoke, Va., for appellant.

F. S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., Howard C. Gilmer, Jr., Asst. U. S. Atty., of Pulaski, Va., and R. Roy Rush, Asst. U. S. Atty., of Roanoke, Va., for appellee.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

Elige Simon was convicted in the United States District Court for the Western District of Virginia under an indictment charging him with violation of 18 U.S.C.A. § 398, Act of June 25, 1910, c. 395, Sec. 2, 36 Stat. 825, known as the Mann Act. From this conviction Simon has duly appealed.

Two questions are raised on this appeal: (1) The sufficiency of the evidence, and (2) whether the interdictions of the Act are limited to commercialized vice.

The fact of transportation was admitted in this case, but Simon contends that the evidence does not sufficiently establish the purpose of transportation so as to bring it within the purview of the Act.

The conduct of Simon and the victim Pauline Miller (hereinafter called Miller), both prior and subsequent to leaving the State of Virginia and entering the State of Tennessee, clearly, we think, indicate the illicit purpose of the transportation. Miller is the wife of a soldier of the United States Army and Simon is also married. For a month or more prior to the acts charged in the indictment, Simon and Miller lived together as man and wife in the home occupied by Miller and her six children in Front Royal, Virginia. On complaint made to the Trial Justice of Warren County, Virginia, Miller was advised by the Trial Justice that Simon would have to refrain from living in the Miller home.

Subsequent to this warning by the Trial Justice, Simon's employment at the Viscose Plant in Front Royal was terminated. The record fails to show whether he was discharged or voluntarily gave up his employment. However, the record does show that there was an abundance of work in that community.

On March 22, 1944, Simon and Miller drove from Front Royal, Virginia, to Harriman, Tennessee, in Simon's automobile. En route, Simon parked his automobile on the Virginia side of State Street in the City of Bristol and walked with Miller across the state line to a restaurant on the Tennessee side of the street. On leaving Bristol, Simon picked up Miller on the Tennessee side and proceeded to Harriman, where Simon secured employment, and the parties lived as man and wife until Simon's apprehension on May 2, 1944. Miller was at no time employed while living in Tennessee. After his apprehension, Simon denied having seen Miller since leaving Front Royal, but later he admitted that they were living together in Harriman.

Miller testified that she was in love with Simon; that she went with him to Tennessee because she loved him; and that she proposed to marry him if she could obtain a divorce. She further testified that her husband would not give her a divorce. However, the record shows that Miller, on leaving Front Royal, left a note advising her eldest daughter that she was leaving, that she "may be back in a month or so or maybe not"; that she had sold part of her furniture. She further directed her daughter not to sell the remaining furniture, but to store it, as she might return. We think the whole picture, with all its lights and shades, sufficiently establishes a guilty purpose.

When Simon and Miller were ordered by the Trial Justice to cease their illegal and immoral practices, it became expedient to move to a new location, in order to continue their illicit relations. Simon was gainfully employed in Front Royal, and for an undisclosed reason, after the warning by the Trial Justice, left his employment. Simon's actions in Bristol not only show the purpose involved, but considered in the light of all other testimony, these actions clearly indicate that Simon was aware that his acts were illegal. Further, Simon's conduct on apprehension was hardly that of one having a sound belief in the legality of his activities.

Simon left an area of abundant employment and secured work in another state, and this, he contends, was the primary purpose of the trip. Even were this true, (which we doubt) that fact would not nec-

essarily indicate the sole or even the primary purpose for which Miller was transported. Had it been Miller who was seeking employment, some measure of credence might be accorded to these contentions.

The pertinent provisions of the Act read as follows:

"Any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, or in any Territory or in the District of Columbia, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, * * * shall be deemed guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $5,000, or by imprisonment of not more than five years, or by both such fine and imprisonment, in the discretion of the court."

Whether this provision applies to vice of a noncommercialized nature was settled in the affirmative by Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168. The Supreme Court was of the opinion that the words "or other immoral purposes" covered more than vice of a commercial nature. The Court there said, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas. 1917B, 1168:

"Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion. Hamilton v. Rathbone, 175 U. S. 414, 421, 20 S.Ct. 155, 44 L.Ed. 219, 222. There is no ambiguity in the terms of this act. It is specifically made an offense to knowingly transport or cause to be transported, etc., in interstate commerce, any woman or girl for the purpose of prostitution or debauchery, or for 'any other immoral purpose,' or with the intent and purpose to induce any such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice."

The rule laid down in the Caminetti case has been relied on by the lower Federal Courts in numerous cases. See Tobias v. United States, 9 Cir., 2 F.2d 361; Drossos v. United States, 8 Cir., 16 F.2d 833; Malaga v. United States, 1 Cir., 57 F.2d 822; Caballero v. Hudspeth, 10 Cir., 114 F.2d 545.

Applicability of the Act to noncommercial (or private) sexual immorality has been recognized by implication in several cases. Gebardi v. United States, 287 U.S. 112, 120, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195; and Brooks v. United States, 267 U.S. 432, 437, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407. The Supreme Court has denied certiorari in several cases involving non-commercialized vice. See United States v. Reginelli, 133 F.2d 595, certiorari denied 318 U.S. 783, 63 S.Ct. 856, 87 L.Ed. 1150; Ghadiali v. United States, 9 Cir., 17 F.2d 236, certiorari denied 274 U.S. 747, 47 S.Ct. 660, 71 L.Ed. 1328; Hart v. United States, 9 Cir., 11 F.2d 499, certiorari denied 273 U.S. 694, 47 S.Ct. 92, 71 L.Ed. 844. These cases also show that the Mann Act does not require that the interstate transportation need be solely for immoral purposes, if such purpose constitute one of the reasons for this transportation.

Simon relies on the case of Hansen v. Haff, 291 U.S. 559, 566, 54 S.Ct. 494, 78 L. Ed. 968. The Supreme Court was there construing Section 3 of the Immigration Act of 1917, 8 U.S.C.A. § 136. Petitioner, an alien, had accompanied a man to Europe and returned with him. The man involved had gone to Vienna to attend a convention and petitioner visited in Denmark. She was ordered deported on her re-entry. The Supreme Court reversed the order, declaring that though illicit relations had been carried on during their absence, she was not re-entering the United States for the purpose of prostitution.

While the wording of the two statutes is similar, the Immigration Act was enacted to prevent the admission of undesirable and forbidden classes of aliens, Haw Moy v. North, 9 Cir., 183 F. 89, certiorari denied 223 U.S. 717, 32 S.Ct. 522, 56 L.Ed. 628, while the controlling factor in the Mann Act is transportation for a proscribed purpose. Caminetti v. United States, supra.

Simon also relies on Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037. In that case the whole purpose of the transportation, as disclosed by the facts, was the taking of a vacation. No intent to engage in prostitution, debauchery, or other immoral purpose was found.

When all the facts and obvious inferences in the case at bar are considered, none

of the cases relied on by Simon is inconsistent with the judgment of the court below.

The judgment of the District Court is affirmed.

Affirmed.