## JARABO v. UNITED STATES.

### No. 4134

Circuit Court of Appeals, First Circuit.

Dec. 9, 1946.

Walter L. Newsom, Jr., of San Juan, P. R., for appellant.

Francisco Ponsa Feliu, Asst. U. S. Atty., of San Juan, P. R. (Philip F. Herrick, U. S. Atty., of San Juan, P. R., on the brief), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The appellant was indicted in five counts for an equal number of separate and distinct violations of § 2 of the White Slave Traffic Act, 36 Stat. 825, 18 U.S.C.A. § 398. He pleaded not guilty to each count but a jury in the court below found him guilty as charged in the first four counts although not guilty as charged in the fifth. Thereupon he was sentenced to terms of imprisonment on each of the counts upon which he had been found guilty; the sentences to run consecutively. On this appeal from the judgment sentencing him as above the appellant asserts that the Government's evidence was insufficient as a matter of law to sustain the verdict of guilty on the first count; that the court below erred in its instructions to the jury and in the admission of certain evidence, and that the conduct of the court below, of the Assistant United States Attorney who tried the case, and of certain of the Government's witnesses was such as to render the trial unfair. We shall consider these contentions in the order enumerated, except those with respect to the charge, which we shall take up in conjunction with the other asserted errors to which they relate.

The evidence offered by the Government in support of the charge laid in the first count, if believed, as apparently it was, tended to prove the following facts. At the time alleged therein, July 1943, the appellant was enrolled as a student at the University of Puerto Rico. On the afternoon of the 27th of that month he took the young woman named in the count, who was a fellow student, in his automobile to a party given by one of their teachers. They left this party at about 6 p.m. and went to a road-side cafe where they danced and drank until about 10 p.m. when the young woman asked the appellant to take her home. He agreed to do so, but instead he drove her to a secluded place and there, over her objections as she said, had sexual intercourse with her. We think this evidence adequate to sustain the verdict returned on the count in question.

The section of the Act under which the appellant was indicted provides so far as material for the purposes of this appeal that "Any person who shall knowingly transport * * * in any Territory * * * any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice * * * shall be deemed guilty of a felony * * *". Obviously this section does not attempt to punish acts of sexual immorality as such. It leaves acts of that nature to punishment under the police power of the locality where committed. Hoke v. United States, 227 U.S. 308, 321, 33 S.Ct. 281, 57 L.Ed. 523, 43 L.R.A.,N.S., 906, Ann.Cas. 1913E, 905; Malaga v. United States, 1 Cir., 57 F.2d 822, 825. What it condemns, so far as Puerto Rico is concerned, is any intra-territorial transportation, (Crespo v. United States, 1 Cir., 151 F.2d 44, 45) of any woman or girl for the purposes, or with the intentions and purposes, stated therein, and this even though there be no element of commercialism involved. Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Cleveland v. United States, 67 S.Ct. 13. So much is

conceded. The appellant's contention is that on the facts we have stated the jury were not warranted in drawing the inference that he transported the woman named in count 1 for any forbidden purpose. He says that on the evidence it could only be found that the purposes for which he transported the woman were the innocent ones of going to an afternoon party and then to a place to dance and have a few drinks and thence to return the woman to her home, so that as a result his sexual intercourse with her could only be found to have been a casual event upon a journey undertaken for other purposes. Hence he argues that under the rule of Yoder v. United States, 10 Cir., 80 F.2d 665, 670-672 and cases therein cited, his transportation of the woman could not be found to have been within the condemnation of § 2 of the Act.

 We do not agree. While it is true that "guilt under the Mann Act turns on the purpose which motivates the transportation, not on its accomplishment" (Cleveland v. United States, supra, 67 S.Ct. 16) it is well established, as we shall have occasion to point out hereinafter, that evidence of specific instances of sexual immorality indulged in by the accused and the woman or girl alleged to have been transported, if proximate enough in point of time, is relevant on the issue of the purpose or intent of the transportation. However the Yoder case, supra, and the cases cited and discussed at length therein, upon which the appellant relies, also establish that such evidence standing alone is not enough to support a verdict of guilty when there is direct evidence indicating that the transportation alleged in the indictment was undertaken for some innocent purpose. Thus the evidence adduced by the Government in support of count 1 would not warrant the inference that the appellant's transportation of the woman named therein was il-

legal at its inception. It could only be found that the appellant's purpose at the start of the journey was to take the woman to an afternoon party. But the transportation was not simply from the woman's house to the party and back again with a casual or incidental moral dereliction on the way home. The evidence is that the place where they went to dance and drink was not on the way from the afternoon party to the house where the woman lived, but in the opposite direction, and the evidence indicates that after leaving the cafe the appellant again deviated from the direct route to her home. From this it is clear that on the evidence the jury could well find that at some point on the trip, either on the way from the party to the cafe or after leaving the cafe to go home, the purpose developed in the appellant's mind to transport the woman for the purpose of having sexual intercourse with her. And since the statute specifically covers any transportation whatever in the Territory of Puerto Rico, that is enough to sustain the conviction. And this holds true even though the appellant at the time he transported the woman for the purpose of having sexual intercourse with her also intended eventually to take the woman home. It is enough if one of the purposes of his transportation of her was within the ban of the statute. Carey v. United States, 8 Cir., 265 F. 515, 518.

From the foregoing discussion it is abundantly clear that the appellant's objection to the portion of the charge quoted in the margin [1] is unavailing.

This brings us to the question of the admissibility of the evidence to which the appellant objected at the trial. Before considering it, however, it is necessary to outline the facts with respect to the second and fourth [2] counts of the indictment.

The Government's evidence indicated that about six months after the occurrence

[1] " * * * there must be at some point the idea formed of transportation for an unlawful purpose. Now, it is conceivable a person would start the transportation of a woman with absolutely innocent intentions, and on the way it occurs to him that maybe she would not object to some immoral practice that he might have in mind and then he conceives the idea of going to such and such a place for such a purpose, he is just as guilty as if he had the intention originally, and it is common sense, as you can see."

[2] It is unnecessary to consider the third count as a separate entity in disposing of the questions presented on this appeal.

of the events already disclosed, specifically in December 1943, the appellant rented an apartment in San Juan but did not live there, or even take any meals there, except casual lunches on a few occasions, and that he only partially furnished it. Its principal equipment consisted of a large sofa and photographic apparatus consisting of lights, reflectors, etc., and a camera mounted on a tripod and equipped with an automatic shutter.

With respect to the second count the Government's evidence was that the appellant transported the woman named therein, and another woman who is not named in any count, in his automobile from separate places in San Juan to his apartment, and there after a few drinks had sexual intercourse with them. Furthermore, the evidence was that the appellant by means of his automatic camera took pictures of himself and the women, sometimes with both of them together and sometimes with one of them alone, all in the nude, not only in the act of having sexual intercourse, but also while indulging in, to say the least, bizarre sexual practices.

The evidence with respect to the fourth count was that on another occasion the appellant took the woman therein named, also in his automobile, from a place in San Juan to his apartment and there attempted to take pictures of her at least partially undressed, but that she refused to permit him to do so, whereupon he struck her several times and tore some of her clothes off but that she escaped and reported the incident to the insular police authorities.

■ One of the appellant's exceptions is to the admission of testimony by the woman named in the fourth count that he had beaten her, and to the testimony of others with respect to her physical condition afterward in corroboration thereof. He says that this testimony was immaterial to any issue in the case and was prejudicial. We do not agree. We think the evidence had some tendency to show the purpose for which the appellant transported the woman to his apartment (it is conceded that his purpose in doing so was immoral) and that it was not so prejudicial as to require its exclusion as a matter of law. The Circuit Court of Appeals for the Eighth Circuit in Neff v. United States, 8 Cir., 105 F.2d 688, 690, 691, held evidence precisely similar to this admissible in a case like the present one and we are not disposed to disagree.

■ The appellant's principal complaint with respect to the admission of evidence is that the court below allowed the Government to introduce as physical exhibits a number of pornographic photographs of the type referred to in our summary of the evidence in support of the second count except that the women appearing in them were not named in any count of the indictment. He says that these photographs of strangers to any charge laid against him were unnecessary, immaterial and irrelevant, confused the issue, were calculated to "inflame the emotions and passions of the jury", and were so numerous, that the court abused its discretionary powers in admitting them.[3]

Ordinarily, of course, evidence of a criminal defendant's misconduct in respects other than that for which he is on trial is not admissible. There is, however, a well established exception to this rule.

In Wood v. United States, 1842, 16 Pet. 342, 41 U.S. 342, 358, 10 L.Ed. 987, Mr. Justice Story in delivering the opinion of the Supreme Court said that "where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment." And this principle has repeatedly been applied in cases like the present one to permit the introduction of evidence of a defendant's acts of sexual misconduct at other times and with other persons, provided the other

---

[3] At the trial the appellant also objected to the admission of some of the photographs on the ground that the Government had not shown that its agents took them from his apartment pursuant to a legal search warrant. This ground has not been pressed on appeal and is untenable for the reason that the burden of proving that evidence has been unlawfully obtained rests upon the party objecting to it. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307.

offenses testified to are similar in character and closely connected in point of time with the offense or offenses charged. Baish v. United States, 10 Cir., 90 F.2d 988, 990; Neff v. United States, 8 Cir., 105 F.2d 688, 691; Tedesco v. United States, 10 Cir., 118 F.2d 737, 739, 740; United States v. Pape, 2 Cir., 144 F.2d 778, 781, and cases therein cited. Since the photographs come within the proviso as to character and time they are clearly not inadmissible as a matter of law. Nor do we think they should have been excluded in discretion.

To be sure photographs constitute rather more dramatic evidence than oral testimony, and the photographs objected to are numerous and many of them are lurid and revolting. We cannot deny their capacity to excite some prejudice against the appellant. But nevertheless, considering them in connection with the oral testimony, we are not prepared to say that the court below abused its discretion in admitting them. We cannot say that their prejudicial effect so far out-weighs their probative value that as a matter of law they should not have been admitted in evidence.[4]

 The appellant further contends, however, that the court below erred in failing to instruct the jury that the above evidence, photographic and oral, was to be used by them only for the limited purpose of showing the intent with which he transported the women named in the indictment. Clearly the evidence was relevant only on the issue of his intent in transporting those women, and the cases cited last above establish that the jury ought to be instructed to use it only for that purpose. But we think that there are two reasons why the appellant cannot take advantage of the court's failure so to charge.

In the first place he did not request such an instruction before the jury retired but makes this point for the first time now. This is too late. McGuire v. United States, 8 Cir., 152 F.2d 577, 580, is a case squarely in point and in it the court said: "since the appellant did not request this charge at the trial, she is not entitled as of right on appeal to base error on the court's failure to give it." In the second place the appellant made repeated and extensive use of the evidence, both photographic and testimonial, as the basis for hypothetical questions addressed to the medical experts he called to prove his defense of insanity. It hardly lies in his mouth to request a limited use of the evidence, or even to request its exclusion, after so using it, since either its exclusion or its limited use would automatically cut at least some of the ground from under his principal defense.

This brings us to the appellant's contention that he did not obtain a fair trial in the court below because of the biased behavior of the presiding judge, the prosecuting attorney and certain of the Government's witnesses. Space prevents our considering each allegation of unfairness separately. There are too many of them. It will suffice to mention only typical instances of alleged misconduct.

 The appellant's principal complaint with respect to the behavior of the court is its criticism of one of his medical experts for referring to a medical text book as an "authority". The entire episode is set out in the margin.[5]

---

[4] What we have said of course covers the appellant's objection to merely oral testimony with respect to his sexual misconduct with persons not named in the indictment and also his objections with respect to the evidence both oral and photographic of his misconduct in his apartment with the woman named in count 1, on an occasion some six months after the events alleged in that count.

[5] "Q. Do you know any authority or are you making that statement from your own experience, or do you have medical authorities to sustain you on that? A. What I have said here almost all authorities say the same thing but I have here—

"The Court: You don't have any authority in medicine, do you?

"A. I have here the most recommended authority in the United States—Peterson.

"The Court: As a matter of fact you don't have any authority. The person writing that book is giving his observation and opinion just as though you write a book—

"Mr. Sanchez: We object to your honor's stating there is no authority in medicine.

"The Court: You will find that in medical jurisprudence frequently there is nothing conclusive. It is one man's opinions and observations and it states it in

It seems to us obvious that the court was distinguishing between an "authority" in the legal sense, that is in the sense of a binding precedent, and an "authority" in the sense of a considered statement of opinion made by a qualified expert. The distinction is valid and the witness appears to have conceded as much. At any rate the court permitted the witness to use the medical text referred to in the way such texts are ordinarily used and we see no substantial prejudice to the appellant from the incidental remarks of the court. In fact from the context it would seem that the jury must have taken the colloquy as merely a friendly, possibly a somewhat humorous, interchange of views between the court, the witness and the appellant's counsel.

The appellant's other criticisms of the trial court do not seem to us serious enough to warrant detailed discussion. It will suffice to say that we have considered them and are unable to conclude that the appellant's right to a fair and impartial trial was substantially trenched upon by anything the court below said or did.

■ His principal criticisms of the prosecuting attorney are that on one occasion he referred to a woman who had been photographed by the appellant as one of his "victims", and that in cross-examining one of the appellant's medical experts he undertook to show that the expert had testified in court a great many times and on several occasions his testimony had not been believed. Upon objection the prosecuting attorney immediately substituted "persons or subjects" for "victims" and as soon as the court discerned the trend of the cross-examination of the medical expert it promptly prevented its continuance. Certainly what was said and done by the prosecuting attorney was not so serious that we can conclude that the corrective actions taken were futile. On the contrary it seems to us that such prejudice as the conduct of the prosecuting attorney may have engendered was completely cured.

■ The appellant also complains that certain witnesses interjected irrelevant and prejudicial comments into their answers. Typical examples are the remarks of the woman who testified in support of the charges laid in count one that "I thought he was a real good boy but never thought that he was the kind he is", and "He has ruined my life." Since the court below repeatedly admonished the witness not to make such remarks, and since at the time they were made instructed the jury to disregard them, we think any prejudice they may have aroused was adequately eradicated. At least we cannot say in the light of the entire record that the remarks were so highly prejudicial that the measures taken could not have been effective so that as a result the appellant should be given a new trial.

It will suffice to say in summary that a careful consideration of all the instances of alleged unfairness at the trial, viewed both individually as isolated events and collectively for their cumulative effect, convinces us that guarding against the "Magnification on appeal of instances which were of little importance in their setting" (Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680, and cases cited) we cannot conclude that the appellant has been denied a fair and impartial trial.

The judgment of the District Court is affirmed.

a book and it so impresses the profession that they take it and find his opinion is correct.

"Mr. Sanchez: It is just like an opinion of a lawyer or a judge—

"The Court: Exactly, when he gets his client in trouble by giving him the wrong advice.

"Mr. Sanchez: The same as judges are again and again reversed, your honor.

"A. (continuing) Well, now these are stated to be standard—

"The Court: It is a standard work—something recognized by the profession generally. I never liked the expression 'authority' when it is composed of some other person's opinion.

"A. The only exact science is mathematics."