## DAIGLE v. UNITED STATES.
### No. 4464.

United States Court of Appeals
First Circuit
April 5, 1950.

312

Robert J. Doyle, Nashua, N. H., for appellant.

Robert D. Branch, Asst. U. S. Atty, Concord, N. H. (John J. Sheehan, U. S. Atty., Concord, N. H., on brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and SWEENEY, District Judge.

WOODBURY, Circuit Judge.

This is an appeal from a judgment sentencing the appellant to a term of imprisonment after he had been found guilty by a jury of knowingly transporting and causing to be transported a girl from Manchester, New Hampshire, to Boston, Massachusetts, for an immoral purpose in violation of § 2 of the White Slave Traffic Act, 36 Stat. 825, 18 U.S.C.A. § 398, now 18 U.S.C.A. § 2421. The principal contention on this appeal is that the evidence is not sufficient to support the conviction.

The testimony is conflicting, but from it the jury could well find that the defendant first met the girl involved sometime in 1946 or 1947 when she was about fourteen years old; that from that time on he had sexual intercourse with her on several occasions until just prior to April 23, 1948, when she was committed to the New Hampshire Industrial School in Manchester; that on August 9, 1948, at about 8 o'clock in the morning, the defendant drove up to the vicinity of the school in his car with the girl's brother; that she met them, entered the car at their invitation, and that the defendant then drove them to Lawrence, Massachusetts, where by prearrangement they met a friend of the defendant's who drove them all on to Boston in his car. In Boston the defendant and the girl separated from the others and took a taxicab to a hotel where the defendant engaged a room for the girl, and bought her a meal. Then it appears that the two went to the movies and after that returned to the hotel room where they had sexual intercourse. Following this the two, with other friends who had joined them, went to "night clubs", and then, leaving the girl at the hotel, the defendant returned to Lawrence to pick up his car and drive to his summer cottage at a New Hampshire beach. A few days later the girl went to Hartford, and from there the defendant at his own expense took her to Georgia where, with her parents' consent, she married a much older man who was a friend, and at that time an employee, of the defendant's.

The defendant did not take the stand, but his counsel in cross-examining the girl, and later by introducing the testimony of members of the girl's family, attempted to show that the girl had planned to escape from the Industrial School because she did not like it, and furthermore, that it was to the defendant's advantage to remove the girl from the State of New Hampshire to prevent her from testifying in criminal proceedings growing out of their previous intimacies then pending against him in that State.

On the basis of the foregoing the defendant contends that there is no legally admissible evidence that the defendant's interstate transportation of the girl was for any immoral purpose defined in the statute. He says that the evidence of his immoral relations with the girl, both before and after the transportation, was inadmissible for the reason that it tended to show the commission of another crime and hence was irrelevant and highly prejudicial, so that, on the only admissible testimony, it could only be found that he transported the girl either for the purpose of removing her from the state to prevent her from giving testimony in the prosecution for statutory rape, or for the purpose of helping her, out of pure good-will, to carry out her plan to escape from the Industrial School; neither purpose being an illegal one so far as the White Slave Traffic Act is concerned.

Clearly the statute makes it a felony to transport a woman or girl in interstate or foreign commerce only when the transportation is for one or more of the immoral purposes enumerated therein. It has been so held by the Supreme Court from the beginning. See Hoke v. United States, 227 U.S. 308, 320, 33 S.Ct. 281, 283, 57 L.Ed. 523, 43 L.R.A., N.S., 906, Ann. Cas. 1913E, 905, in which it is said of the statute generally that "What the act con-

demns is transportation obtained or aided, or transportation induced, in interstate commerce, for the immoral purposes mentioned." And in Jarabo v. United States, 158 F.2d 509, 512, this court held after careful consideration, and we see no reason to canvass the matter again, "that evidence of specific instances of sexual immorality indulged in by the accused and the woman or girl alleged to have been transported, if proximate enough in point of time, is relevant on the issue of the purpose or intent of the transportation." See also United States v. Reginelli, 3 Cir., 133 F.2d 595, 598. Thus, contrary to the defendant's contention, there is admissible evidence that one at least of the purposes for which he transported the girl from Manchester, New Hampshire to Boston, Massachusetts was to have sexual intercourse with her, for their previous acts of that nature, as testified to by the girl, were proximate enough in point of time, considering her incarceration in the Industrial School, to indicate that the defendant had that purpose in mind at the start of the journey. Moreover, their relations in the hotel room in Boston, testified to by the girl as occurring soon after the completion of the interstate trip, also indicate that its purpose was an immoral one. In connection with this latter evidence it is to be noted, however, that this is not a case in which the government relies entirely upon evidence of a moral dereliction at the end of an interstate trip to sustain a conviction under the statute in the face of direct evidence that the trip was originally undertaken for some innocent purpose, with the result that on all the evidence it would be as probable as not that the moral dereliction at its termination was an afterthought, or a mere casual incident, of an otherwise innocent interstate journey. The evidence of prior moral derelictions with the girl involved, coupled with the evidence of their dereliction at the end of the trip, adequately supports the conclusion that from the beginning at least one of its purposes was illicit intercourse. Nor is this a case like Van Pelt v. United States, 4 Cir., 240 F. 346, 349, in which no plausible reason is suggested by the record for taking an interstate trip in order to accomplish an immoral purpose which could be accomplished as conveniently without the trouble and expense of such a trip, for it is evident that illicit relations with the girl stood a far better chance of undisturbed accomplishment in the concealment of the metropolis of a neighboring state, out of the immediate reach of the New Hampshire authorities, than in New Hampshire, where presumably the authorities would be promptly alerted and on the watch to apprehend the girl as soon as she was missed at the Industrial School.

■ But is it enough for a conviction under the statute that one of the purposes for the transportation of a woman or girl is an immoral one within the statutory wording when there is also evidence of other purposes, perhaps equally motivating, but innocent so far as the statute is concerned? This question was not raised by counsel for the defendant, either here or in the court below, and that court without objection charged the jury to the effect that a verdict of guilty did not have to be predicated upon a finding that the sole or only purpose of the trip was an immoral one but that it was enough for conviction to find that one of its purposes was immoral. We raise the question ourselves under established principles, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, and Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., because it seems to us important in view of the statement in Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 1040, 88 L.Ed. 1331, that: "An intention that the women or girls shall engage in the conduct outlawed by § 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement", and the later statement in Cleveland v. United States, 329 U.S. 14, 20, 67 S.Ct. 13, 16, 91 L.Ed. 12, that: "There was evidence that this group of petitioners in order to cohabit with their plural wives found it necessary or convenient to transport them in interstate commerce and that the unlawful purpose was the dominant motive."

It may be, although we do not decide, that the evidence in the case at bar is sufficient

to warrant the inference that beyond a reasonable doubt the defendant's "dominant motive" for transporting the girl was to have sexual intercourse with her in Massachusetts safe from prompt discovery and immediate arrest by the New Hampshire authorities. But however this may be, the fact remains that the jury did not make any finding that the defendant's "dominant motive" for the transportation was illicit relations with the girl because they were not told that such a finding would have to be made in order to return a verdict of guilty. Instead they were distinctly told that such a verdict could rest upon a finding that the sole purpose or "one of the purposes" of the transportation was an immoral one. Hence there ought to be a new trial if a verdict of guilty in cases of this sort may not legally rest upon a finding that one of the coordinate purposes of the interstate movement was immoral conduct as defined in the statute, but can only rest upon a finding that such conduct was the "dominant" purpose of the movement.

But we do not think that the language quoted above from the Mortensen and Cleveland cases is to be taken literally as requiring differentiation between the relative motivation of multiple purposes, some innocent so far as the statute is concerned and some not, for which a woman or girl is taken on an interstate journey. We reach this conclusion because in the Mortensen case the Supreme Court reversed a conviction under the statute on the ground of lack of any evidence whatever that the defendants took the girls on an interstate trip for any other purpose than the innocent one of giving them a deserved vacation from their work as prostitutes in their bawdy house, and in the Cleveland case there was also no question of multiple purposes for the interstate trips under consideration; it appearing only that the defendants, for some reason or reasons of their own, saw fit to cross state lines with the women or girls involved for the sole purpose of contracting plural marriages with them in other states. Thus the state-

ments quoted above are at most dicta, and not even considered dicta, for no detailed analysis of the question of multiple purpose in cases of this sort is undertaken.

We are not sure, but we incline to think, that if the Supreme Court had intended by the above remarks to invalidate a respectable line of authority,[1] and for the future to establish the rule that for a conviction under the statute it must appear beyond a reasonable doubt, not merely that one of the purposes of the interstate trip was to do some forbidden act, but that its "dominant" purpose was to do such an act, it would have given the matter more detailed consideration and stated its conclusion in more explicit terms. In short, we take the same view of the above language from the Mortensen opinion as that taken in Mellor v. United States, 160 F.2d 757, 764 (a multiple purpose case like the present) in which the United States Court of Appeals for the Eighth Circuit said that a charge to the effect that in prosecutions under the Mann Act it was incumbent upon the government to prove that the defendants' immoral purpose was "'not a mere incident but rather an efficient purpose prompting and impelling the defendants to the transportation of the girls'", "was sufficient, and it was not necessary to incorporate therein the exact language of the Supreme Court in the Mortensen case"; and, in addition: "We do not understand the Mortensen case as holding that an instruction on illicit purpose in a Mann Act prosecution must use the precise words 'dominant motive.'" We think the same may also be said of the language quoted above from the Cleveland opinion.

█ Upon further consideration we therefore conclude that we were correct in Jarabo v. United States, 158 F.2d 509, 512, when we said: "It is enough if one of the purposes of his transportation of her was within the ban of the statute." Moreover this view is in accord with that of the Fourth Circuit, for in Simon v. United States, 145 F.2d 345, 347, decided after the

---

1. Van Pelt v. United States, 4 Cir., 240 F. 346, 349; Carey v. United States, 8 Cir., 265 F. 515, 518; Ghadiali v. United States, 9 Cir., 17 F.2d 236, 237, 238; Yoder v. United States, 10 Cir., 80 F.2d 665, 672.

Mortensen case but before the Cleveland case, it is said that "the Mann Act does not require that the interstate transportation need be solely for immoral purposes, if such purpose constitute one of the reasons for this transportation." And apparently the Tenth Circuit also agrees for in Long v. United States, 160 F.2d 706, 709, 710 (decided after both of the above Supreme Court cases) in spite of citing the Mortensen case for the proposition that "one of the dominate (sic) purposes of the interstate transportation" of the girl must be "to engage in immoral practices", it was said in affirming a judgment of conviction that in the circumstances disclosed the court below, jury trial having been waived, was "warranted in finding that at least one of the purposes of the interstate transportation was to engage in conduct outlawed by the Act." We think therefore that the court below correctly stated the law in its charge.

▮ A question of the admissibility of certain testimony remains to be considered. Apparently in the effort to show that the girl was planning to escape from the Industrial School, counsel for the defendant in cross-examining her developed that she had been visited by several members of her family, including two brothers, on the day before she left that institution with the defendant; but establishing this, he was unable to elicit from her that at that visit she had laid plans with her brothers to escape. Then counsel asked her "Do you remember hearing your brother Norris asking your brother Harold if he could use Harold's automobile?" The question was objected to by the United States Attorney and after colloquy excluded. We see no error in this ruling.

There is no suggestion, or room for suggestion in the record, that the witness' answer to the question could have any effect upon her credibility. Its only purpose could have been to show that the witness' brother Norris, who had died prior to the trial, was planning to help the witness escape from the school just before she escaped from it with the defendant, thereby bolstering the contention that the defendant's purpose also was to help her to escape rather than to have intercourse with her. Assuming an affirmative answer to the question, however, all that it would show was the brother's intention, and this only provided that it is further assumed that he wanted his brother's car to help in the escape, and perhaps quite collaterally, that the girl intended to escape from the school. But the girl's and her brother's intentions are irrelevant. We are concerned with the defendant's purpose in taking the girl from Manchester to Boston, not with hers in leaving the school or her brother's in helping her, and these are the only matters an answer to the question could possibly illuminate. At the most the question involved the exploration of immaterial and irrelevant matters and was properly excluded for that reason.

Other questions raised by the appellant have upon consideration been found too insubstantial to warrant comment.

The judgment of the District Court is affirmed.