THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALFREDO CASTRO CRUZ, Defendant and Appellant.

No. CR-63-142.     Decided April 6, 1964.

*Ángel Viera Martínez* for appellant. *J. B. Fernández Badillo,
Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief
Judge of Division, Mr. Justice Rigau, and Mr. Justice
Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In an amended information the prosecuting attorney
charged appellant with the offense of embezzlement (violation of § 446 of the Penal Code), in that the defendant "on
or during the period between November 1954 and November
1957, both inclusive, in Cataño, Puerto Rico . . . while acting as an officer of the Government of Puerto Rico, and
while in the discharge of the office of Collector of Internal
Revenue of Cataño, Puerto Rico, he unlawfully, wilfully,
and maliciously and with the intent to defraud, as he did
defraud, The People of Puerto Rico, embezzled approximately
the amount of $28,000 delivered and entrusted to his custody as payments of property tax made by the taxpayers
of the Municipality of Cataño, Puerto Rico, said money
being the public funds belonging to the People of Puerto
Rico, and which were received by the defendant Alfredo
Castro Cruz in the course of his official duties as Collector
of Internal Revenue of Cataño, Puerto Rico, using said
money in his own behalf for purposes alien to the legitimate
scope of his employment and corresponding to its proper
and legitimate administration, thereby defrauding the People
of Puerto Rico in the aforesaid sum of $28,000."

A jury convicted him of said offense and the court imposed a suspended sentence from which he appealed assigning the following errors:

"First Error: The trial court erred in not dismissing the information which alleged facts that in part had prescribed, or in the alternative, to eliminate from the information the facts which had prescribed.

"Second Error: The trial court erred in admitting the statements attributed to the defendant without having established the corpus delicti.

"Third Error: The court erred in failing to acquit the defendant since the evidence does not establish the corpus delicti beyond a reasonable doubt.

"Fourth Error: The trial court committed error in permitting the jury to take with it to the deliberation room the sworn statement of the defendant, Exhibit 15."

■ Arguing the first error, appellant maintains that the offense of embezzlement charged against him in the information prescribes after three years, and for this reason and as he requested at the commencement of the trial, the information should have been dismissed or, in the alternative, it should have been limited to the facts that took place within the three years immediately preceding the commencement of the criminal prosecution. To this end he argues that appellant could have been accused of embezzlement, as he actually was, or for violation of § 372 of the Penal Code (33 L.P.R.A. § 1511), which has to do with the irregular appropriation and handling of public funds, and it is in the violation of this section that there is no prescriptive period for the commencement of the criminal prosecution. He further expounds the theory that since the offense of embezzlement is contained in the Penal Code under the chapter dealing with offenses against the property, while § 372 appears in the chapter concerning offenses against the treasury of Puerto Rico, it is to this latter section that the provisions of § 77 of the same Code apply when it says that there is no limitation of time within which a prosecution for the embezzlement of public moneys may be commenced.

We do not agree. Section 445 of the Penal Code (33 L.P.R.A. § 1721) defines, in general terms, the offense of embezzlement as the fraudulent appropriation of property by a person to whom it has been intrusted. The following sections define the offense of embezzlement committed by particular persons, such as public officers, corporation officers, public carriers, trustees, bankers, merchants, brokers, attorneys in fact, agents, depositaries, lessors, clerks, servants, etc. Appellant was charged with a violation of § 446 which provides:

"Section 446.—Every officer of Puerto Rico, or of any municipality, city, or other civil division, and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, attorney, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

This section provides therefore that public officers as well as officers and other employees of public or private corporations who perform acts prohibited therein shall be guilty of embezzlement. We must bear in mind that in the information filed against appellant he was charged with being an officer of the Government of Puerto Rico (Collector of Internal Revenue of Cataño), and of having fraudulently appropriated to himself $28,000 belonging to the People of Puerto Rico and which had been delivered and entrusted to him as property taxes paid by taxpayers of the municipality of Cataño.[1] Whether it is called "embezzlement" or violation of

---

[1] The money delivered by the taxpayers to the collector in payment of their taxes, becomes from the very moment of the delivery money belonging to the People of Puerto Rico. *Maisonave* v. *Treasurer*, 45 P.R.R. 238 (1933).

§ 372 of the Penal Code, this case deals with an offense against the treasury of Puerto Rico committed by a public officer notwithstanding the fact that they appear under different chapters of the Code.[2]

■ However, in fixing the terms within which the prosecution shall commence, the Code provided that there is no limitation of time to commence an action for the crime of murder, embezzlement of public moneys, and falsification of public records, and that the prosecution for any felony other than murder, or embezzlement of public moneys, or the falsification of public records, shall commence within three years after its commission. Sections 77 and 78 of the Penal Code.[3]

■ The application of the provisions of these two sections concerning the crimes of embezzlement of public moneys is not limited, as appellant belives, to the offenses defined in Title XVI—Crimes Against Public Revenue—of the Penal Code. On the contrary, said provisions for prescription cover all the offenses which consist in the misappropriation of revenue or, as stated in the English text "em-

---

[2] Section 372 provides in part that every officer of Puerto Rico or of any municipality or local district and every person charged with the receipt, safe-keeping, transfer or disbursement of public moneys, who without authority of law, appropriates the same in whole, or any portion thereof, to his own use, or to the use of another is punishable by imprisonment in the penitentiary for not less than one nor more than ten years, and is disqualified from holding any office.

[3] Said sections provide as follows:

§ 77.—*Time to Commence Criminal Actions.—No Limitation, When.* There is no limitation of time within which a prosecution for murder, the embezzlement of public moneys, and the falsification of public records must be commenced."

"§ 78.—*Three Years for Felonies.* The prosecution for any felony other than murder, the embezzlement of public money, or the falsification of public records, must be commenced within three years after its commission."

bezzlement of public moneys."[4] See *People* v. *Pérez*, 47 P.R.R. 724 (1934).

Appellant stresses the fact because the offense of embezzlement has two degrees. To that effect he states:

". . . Since the offense of embezzlement, like the crime of larceny, may be either grand or petit—depending on the amount appropriated (grand when the value of the property is $100 or more; petit when the value of the property is less than $100), if the embezzlement took place in the period which has *not prescribed* of an amount less than $100, the crime would be a misdemeanor. If the embezzlement of the difference up to $28,000 took place in the period that *has prescribed*, then the defendant has been tried for facts which do not constitute an offense by reason of prescription."

■ As correctly stated by the Solicitor General, appellant's theory is based on an erroneous premise. When the thing stolen or defalcated are public funds, the act shall constitute a felony as provided by § 455 of the Penal Code (33 L.P.R.A. § 1731). So that even if the amount stolen or defalcated in this case were less than $100 since the money belonged to the public funds, the offense of embezzlement would always be a felony.

■ In arguing jointly the second and third assignments, appellant lays down the erroneous premise that the corpus delicti should be established beyond a reasonable doubt by

---

[4] In line with this view it is very significant that the offense against public treasury defined in § 372 of the Penal Code is punished with imprisonment from one to ten years and the disqualification to hold public office and that of embezzlement is punishable in the manner prescribed for larceny, the latter being divided into grand and petit larceny, depending on the amount stolen, except "that if the embezzlement or defalcation be of the public funds of the United States, or of Puerto Rico, or of any municipality, city, or village of Puerto Rico, the offense is a felony, and shall be punishable by imprisonment in the penitentiary not less than one year nor more than ten years; and the person so convicted shall be ineligible thereafter to any office of honor, trust, or profit in Puerto Rico." (Section 455 of the Penal Code.)

means of evidence independent of the admissions and confession of the defendant.

■ In other cases we have said that the corpus delicti is "the body and substance of the crime" and with respect to specific crimes it means the actual commission by someone of the particular crime charge. *People* v. *Hernández*, 75 P.R.R. 852, 861 (1954); *People* v. *Colón*, 81 P.R.R. 321 (1959). It may be established by prima facie evidence from which the commission of an offense be logically inferred. *People* v. *Ortiz*, 69 P.R.R. 349, 353 (1948). The evidence does not have to be complete, direct, nor positive, it being sufficient that there be sufficient circumstantial evidence from which it may be reasonably inferred that a crime has been committed. *People* v. *Rivera*, 67 P.R.R. 275 (1947); *People* v. *Declet*, 65 P.R.R. 22, 25 (1945).[5]

■ Appellant alleges that the corpus delicti in a crime of embezzlement is composed of three basic elements of the offense, to wit: fiduciary relation, object certain, and fraudulent appropriation. "Of these three elements—he argues —two have been established: the fiduciary relation and the object certain which is the sum of money. As to the other (fraudulent appropriation) no evidence was offered sufficient to establish its existence beyond a reasonable doubt with evidence independent from the statements of the defendant."

We do not agree. The evidence for the prosecution, excluding defendant's admissions, established prima facie that a public officer of Puerto Rico (Collector of Internal Revenue), fraudulently took or used the money intrusted to his

---

[5] To the same effect, see: *People* v. *Truyol*, 36 P.R.R. 338 (1927); *People* v. *Matos et al.*, 26 P.R.R. 520 (1918); *People* v. *Rupp*, 260 P.2d 1; *People* v. *Mehaffey*, 197 P.2d 12; Fricke, California Criminal Law 22, 6th ed.; 2 Wharton, Criminal Evidence 137–138, § 394; *Masse* v. *United States*, 210 F.2d 418; *D'Aquino* v. *United States*, 192 F.2d 338, *certi denied*, 343 U.S. 935; *reh. denied*, 343 U.S. 418.

care (proceeds of his tax collection), for purposes other than those corresponding to its proper and lawful administration. Let us see.

At the commencement of the trial there was a stipulation between the parties to admit in evidence a series of documents belonging to the office of Internal Revenue of Cataño, which were used by the examiner of the Comptroller's Office in the investigation of said internal revenue office. Among those there is a set of receipts obtained from a great number of taxpayers who had paid their property tax in the collector's office during the tenure of said defendant as Collector of Internal Revenue of Cataño. There were also admitted in evidence all the books and official documents of said office and several deposit sheets of the deposits made by the collector in the First National City Bank and the Banco de San Juan. The first witness for the prosecution called to testify was Pedro Galindo, examiner of the Office of the Comptroller, who was in charge of the investigation made in the Office of Internal Revenue of Cataño. He testified that his investigation covered the period from November 9, 1954 to November 21, 1957. His intervention consisted in making an inventory of the securities in possession of the collector and an analysis of the operations during the period under investigation in order to determine whether the operations transacted during that period were correct. The result of his investigation showed that there was a difference between the total amounts of the accounts and the physical inventory of the property tax receipts in possession of the collector, that is, that the amount of the receipts which were physically in possession of the collector was less than the amounts showed by the accounts. He referred to the receipts and accounts where the receipts entries are made. He examined the receipts themselves, the journal of collections, the cash book, and the current accounts kept by

the collector. He also examined the receipts pending payment which were in possession of the collector.

The receipts collected should appear entered in the journal of collections, one by one on the date on which they were collected. He made an inventory of the receipts collected and those that were pending payment in order to determine whether they amounted to the total number of receipts sent by the Secretary of the Treasury during the period covered by the investigation, and he found that there was a shortage. He obtained from several taxpayers property tax receipts which had been paid to the defendant and had not been entered in the journal of collections, nor in the cash book, nor in the bimonthly reports sent to the Secretary of the Treasury. The copy of the receipts collected and entered in the corresponding books are sent to the Secretary of the Treasury. He spoke with the defendant and the latter made certain admissions to which we shall refer hereinafter, and then he delivered to him a vast number of copies of receipts collected by him and not entered in the books. These copies of receipts were taken by the defendant from the trunk of his automobile. The receipts not entered in the books amount to $27,605.98. Of these receipts there are 20 or 25 which are dated prior to the date in which the defendant alleged that there had been a burglary in the Office of Internal Revenue of Cataño. The witness further testified that the amounts of the receipts not entered in the books (Exhibit 13 of The People), was not deposited in the banks in the name of the Secretary of the Treasury.

This evidence is sufficient to establish the corpus delicti. See *People* v. *Martínez*, 50 P.R.R. 744 (1936). It shows that the defendant, in his capacity as Collector of Internal Revenue of Cataño, collected property tax from the taxpayers of said municipality, issued the corresponding receipts signed by him and did not report those collections to the Secretary of the Treasury, as it was his duty, nor entered them in the

corresponding books. It clearly appears that the funds intrusted to his custody as Collector of Internal Revenue of Cataño were fraudulently used for purposes other than those corresponding to their proper and legitimate administration.

The evidence for the prosecution further showed that when the examiner Galindo discovered the shortage in the entries of the tax receipts he spoke with the defendant and the latter told him "that actually the money was missing in the accounts of the Office of the Collector, but that the reason was. . . . That on December 1955 there had been a burglary in his office and they had taken from the safe deposit box securities and money amounting to 26,000 and odd dollars . . . and that he had used the money that now appeared as shortage to cover those securities and the money which had been stolen at the time of the burglary." It was then that the defendant delivered to the witness the copies of the receipts collected and not entered in the books. The witness asked the defendant to sign a sworn statement, to which the latter answered if he could wait until Monday because he intended to restore the money shortage.

The theory of the defense was that on the evening of December 17–18, 1955, which was a Saturday, and on the evening of the 19th of the same month and year, which was a Sunday, burglaries had been committed by third persons in the Office of Internal Revenue of Cataño, and that the moneys and securities that were missing had been stolen. In this respect, José Morales Cruz, Chief of the Inspection Division of the Internal Revenue Bureau, testified that he received a call from the Office of the Collector of Cataño on December 19, 1955, informing him that there had been an attempted burglary in the office and that the collector said: "Everything is protected, there has been nothing abnormal, and the money had been deposited."

There is no doubt that the evidence shows that there was a burglary in the Office of the Collector of Cataño, but the evidence also shows, taken as a whole, that the burglars did not take the money which it is alleged to have been fraudulently taken by the defendant. In any event, at most there was a conflict of the evidence which was decided by the jury against the defendant. In thus deciding, it committed no error. On the contrary, the evidence is sufficient to support the conviction of appellant beyond any reasonable doubt. The second and third errors were not committed.

■ The fact that the trial court permitted the jury to take with them to the deliberation room the written statement of the defendant, is not a reversible error. The trial in this case was held prior to the decision in *People* v. *Ramos*, 84 P.R.R. 542 (1962). In the statement of the defendant the only point admitted by him is the shortage, explaining that the cause of said shortage was the occurrence of the alleged burglary, an admission identical to the one he made verbally to examiner Galindo. If it is further considered that the defendant made the same statement in expressing his theory of defense before the jury, the error assigned did not prejudice his substantial rights, and, therefore, it does not call for the reversal of the judgment. See *People* v. *Couret Martínez*, 89 P.R.R. 56 (1963); *People* v. *Hernández Rodríguez*, 89 P.R.R. 754 (1964); *People* v. *González*, per curiam decided January 17, 1964.

The judgment appealed from will be affirmed.

