**MASSE v. UNITED STATES.**
No. 14612.

United States Court of Appeals
Fifth Circuit.
Feb. 9, 1954.
Writ of Certiorari Denied
May 3. 1954.
See 74 S.Ct. 711.

---

Ralph Walter Masse, in pro. per.

Harold J. McAuley, New York City, for appellant.

Hayford O. Enwall, Asst. U. S. Atty., Gainexville, Fla., Harrold Carswell, U. S. Atty., Tallahassee, Fla., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

BORAH, Circuit Judge.

The United States, by an indictment in one count, filed on February 11, 1953, charged the defendant (appellant) with having on January 6, 1953, knowingly transported Dorothy Darlene Crosier in interstate commerce from New York City, New York, to Panama City, Florida, for the purpose of debauchery and other immoral purposes in violation of 18 U.S. C. § 2421. The defendant entered a plea of not guilty. The case was tried to a jury, which returned a verdict of guilty. Sentence was imposed upon the verdict, and the defendant has appealed. He asserts that the court should have directed a verdict of acquittal upon the ground that the evidence was insufficient to sustain his conviction, and that errors of law were committed during the trial which entitled him to a reversal.

■ We shall first discuss the sufficiency of the evidence to support the verdict and judgment, which is presented by the motion for acquittal. In answering that question, we consider only the evidence favorable to the verdict and such reasonable inference as the jury may have drawn therefrom. Affronti v. United States, 8 Cir., 145 F.2d 3; Henderson v. United States, 9 Cir., 143 F.2d 681; Butler v. United States, 7 Cir., 138 F.2d 977.

Special Agent Easterling of the Federal Bureau of Investigation testified that he interviewed the defendant Masse on January 9, 1953, approximately five minutes after he was taken into State custody by the sheriff at Panama City, Florida, on another charge. At that time and prior to any interrogation on his part he advised Masse of his official status and stated that he wanted to talk to him about a possible violation of a Federal law; told him that he did not have to make any statement; that any statement which he did make could be used against him; and that he had a right to consult a lawyer at any time.

After this warning Masse was then questioned and voluntarily stated in substance the following. He stated that he was married, the father of three children and that the youngest child was approximately seven months of age; that in April, 1952, a Miss Crosier with whom he had been having sexual relations was upon his suggestion and with his wife's permission brought into their home in Boston, Massachusetts, to help with the children; that he continued to keep company with Miss Crosier and when his wife discovered the situation she became angry and ordered him to leave the house with the two oldest children. That he took Miss Crosier and the two children to her home and people in El Cart, Illinois, and there they held themselves out as man and wife. On or about November 1, 1952, and because of the circulation of news that they were not married they left El Cart and went to Lake City, Florida, where they again represented themselves to be husband and wife. During their two or three weeks stay in Lake City, Masse employed a lawyer and applied for a divorce from his real wife, who had no knowledge as to his whereabouts. On or about December 1, 1952, Masse's father came to Lake City and took Miss Crosier and the two boys back to New York and a week later the defendant went to New York, stayed but a few days, and then brought Miss Crosier and the children back to Florida in his automobile. They arrived at Lake City on New Year's Eve where they again visited in the house of Masse's army friend Willis. Because of certain unexplained difficulties they decided to leave and drive over to Panama City to visit Miss Crosier's cousin, a Miss Smith, where they lived as husband and wife for about three days. The defendant admitted that he had sexual intercourse with Miss Crosier at Miss Smith's home on the night before he was arrested and indicated that he intended to divorce his wife and marry Miss Crosier.

The action of the court in admitting in evidence the verbal confession of Masse is challenged on the ground that the Government had not first laid the predicate for its admission by proving the corpus delicti. We do not at all agree.

 The gist of the offense denounced by the statute is the transportation in interstate commerce of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose." Accordingly it is plain that in the instant case the corpus delicti would consist of some proof that on or about January 6, 1953, Miss Crosier was transported from New York City, New York, to Panama City, Florida, for an immoral purpose. As to the character and sufficiency of the proof required we quote the following apt language from our opinion in Vogt v. United States, 5 Cir., 156 F.2d 308, 310, wherein it was said, " 'A conviction cannot be had on the extrajudicial confession of the defendant, unless corroborated by proof aliunde of the corpus delicti. Full, direct, and positive evidence, however, of the corpus delicti, is not indispensable. A confession will be sufficient if there be such extrinsic corroborative circumstances, as will, *when taken in connection with the confession,* establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt.' "

 Coming now to a consideration of the evidence which the Government adduced to prove the corpus delicti we deem it sufficient to point that there was evidence which tended to establish these facts: (1) that during the latter part of December, 1952, Masse accompanied by Miss Crosier and the two boys returned to the house of Willis in Lake City, Florida, in Masse's car; (2) that upon their return Masse told Willis that they had come from New York; (3) that on this second visit to the house of Willis they stayed two or three days and again all four slept in the living room on pallets; (4) that on January 6, 1953, Masse, Miss Crosier and the two boys arrived in an automobile at the home of Smith near Panama City and asked for a place to stay saying that they had

come from Lake City; (5) that Miss Smith supplied sleeping accommodations for the two boys and a bed for Masse and Miss Crosier in the same room, which they occupied together from January 6th until January 9th; (6) that during their stay Masse told Miss Smith that their purpose in being "down here" in Panama City was "to establish a residence to get a divorce" and he told Smith that he was going to find a job. On January 9th the defendant was arrested on the charge of adultery and taken into custody by the sheriff. We think it clear that this evidence, together with the inferences fairly to be drawn from it, was abundantly sufficient to establish the corpus delicti and we hold that the trial court did not err by admitting in evidence the extrajudicial confession of the defendant.

■■ We think it equally clear on this record that the evidence is sufficient to sustain the conviction of Masse. The evidence of defendant's unlawful cohabitation with the girl in Illinois, their similar intimacy at Lake City, coupled with the evidence of their adultery at Panama City, adequately supports the conclusion that from the beginning at least one of the purposes was illicit intercourse. The White Slave Traffic Act does not require that the interstate transportation need be solely for immoral purposes, if such purpose constitutes one of the reasons for the transportation. Dunn v. United States, 10 Cir., 190 F.2d 496; Daigle v. United States, 1 Cir., 181 F.2d 311; Mellor v. United States, 8 Cir., 160 F.2d 757. The appellant seemingly argues that because the transportation was for the "primary" purpose of establishing a residence in Florida so that he could obtain a divorce and marry his girl companion that the Mann Act was not violated and he was at liberty to cohabit with her as his mistress and continue living with her while he was trying to get a divorce despite the fact that it amounted to a living in adultery which was an immoral purpose. We think this contention is without merit and that the Supreme Court has in effect so held in Cleveland v. United States, 329 U.S. 14, 17, 67 S.Ct. 13, 14, 91 L.Ed. 12. There the Court in referring to its earlier decision of Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, said: "Thus one who transported a woman in interstate commerce so that she should become his mistress or concubine was held to have transported her for an 'immoral purpose' within the meaning of the Mann Act."

Other matters urged by counsel have been considered but an examination of the record has convinced us that nothing that occurred at the trial entitles the defendant to a reversal.

The judgment is affirmed.