**Elliott Burt FORREST, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

No. 22795.

United States Court of Appeals
Fifth Circuit.

July 19, 1966.

Guy Johnson, George M. Leppert, New Orleans, La., for appellant.

Edward S. Szukelewicz, Atty., Dept. of Justice, Washington, D. C., R. Macey Taylor, Asst. U. S. Atty., Birmingham, Ala., Macon L. Weaver, U. S. Atty., for appellee.

Before BROWN and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

BEN C. DAWKINS, Jr., District Judge:

Appellant was indicted in two counts for violation of the White Slave Traffic Act, 18 U.S.C. § 2421. The first count charged that he transported three women from Birmingham, Alabama, to Pensacola, Florida, for the purpose of prostitution and other immoral purposes; the second count charged that he transported the same women from Pensacola, Florida, to Birmingham, Alabama, for a like purpose. Upon trial without jury the district judge found appellant guilty on both counts. We affirm.

In March, 1964, appellant rented an apartment in a suburb of Birmingham where he and "Nancy," one of the three women, lived and operated a house of prostitution. Appellant and "Nancy" recruited the other two young women, each of whom were given regular scheduled days of residence in the apartment, where they filled "dates" of prostitution. The three women, with "Nancy" as madam and sometime prostitute, also filled "dates" as call girls from the apartment. Either appellant or "Nancy" collected forty percent of the girls' earnings.

During April, 1964, appellant and the three women decided to take a vacation trip to Pensacola, Florida, it being agreed that neither appellant nor "Nancy" would take any percentage of the girls' earnings while there, and that any money received for "dates" would be divided equally between the two interested participants. Prior to departure, appellant telephoned an acquaintance in Pensacola and suggested that the girls would be available there for plying their trade. Upon their arrival, appellant's contact provided one customer, whose $50.00 was divided between the two girls excluding "Nancy."

The week-end sojourn ended, the four returned to Birmingham to resume business; that very evening a "date" was filled. Appellant's business continued as usual until the apartment was raided by local law enforcement officers late in May, 1964.

The White Slave Traffic Act, 18 U.S.C. §§ 2421–2424, popularly known as the Mann Act, pertains to the transportation of women in interstate commerce for the purpose of prostitution or other immoral purposes. The object of the Act is to prevent or minimize white slave traffic which utilizes interstate commerce as a means of procuring and distributing its victims, and to suppress traffic in women and girls by panderers and procurers who would compel them to enter a life of debauchery. Mortensen v. United States, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944); Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

"But it is not necessary to a conviction under the Act that the sole and single purpose of the transportation of a female in interstate commerce was such immoral practices. It is enough that one of the dominant purposes was prostitution or debauchery. It suffices if one of the efficient and compelling purposes in the mind of the accused in the particular transportation was illicit conduct of that kind. The illicit purpose denounced by

the Act may have coexisted with other purpose or purposes, but it must have been an efficient and compelling purpose. [Citing cases.]" Dunn v. United States, 190 F.2d 496, 497 (10 Cir. 1951).

In its written findings of fact the trial court found that appellant transported the women from Birmingham, Alabama, to Pensacola, Florida, "for the dual purposes of taking a vacation and for the girls to fill dates of prostitution." In a conclusion of law relating to that first leg of the trip, the court stated, "One purpose of the transportation [of women in interstate commerce] was for the purpose of prostitution or other immoral purposes."

Appellant relies on Mortensen v. United States, supra, where defendants, who operated a house of prostitution in Grand Island, Nebraska, transported two prostitutes to Salt Lake City, Utah, on a two-week vacation. They were charged with a Mann Act violation for the return trip to Grand Island to resume business. The girls committed no acts of prostitution during the whole trip and there was no discussion of such acts during the course of the journey. The Supreme Court reversed the conviction, holding that the sole purpose of the whole trip, including the return to the house of prostitution in Grand Island, was to provide innocent recreation. The fact that the girls did resume their immoral practices following their return did not inject a retroactive illegal purpose into the return trip. Appellant's argument centers upon the following language:

"An intention that the women or girls shall engage in the conduct outlawed by Section 2 [§ 2421] must be

found to exist before the conclusion of the interstate journey and *must be the dominant motive of such interstate movement.*" 322 U.S. at 374, 64 S.Ct. at 1040. (Emphasis added).

Noting the factual differences existing in the Mortensen case and his case, appellant cites United States v. Hon, 306 F.2d 52 (7 Cir. 1962), as authority for the proposition that if any immoral purposes were served by the vacation trip, they were merely incidental and insufficient to support that element of the crime necessary for conviction. In Hon the defendant transported Irene, who was known to him to be a prostitute and whose earnings financed the trip. His conviction was reversed, where "The purpose of the planned journey from Reno, Nevada, to Laurel, Maryland, according to the uncontradicted testimony of Irene, a government witness, was other than prostitution. She was going to Laurel, Maryland, to visit her mother and child." 306 F.2d at 54. The court went on to hold that the defendant and Irene were engaging in an interstate trip for proper purposes, when "she did incidentally engage in prostitution" because of "automobile difficulties which unexpectedly taxed their financial resources." Id. at 55.[1]

This court has long declined to extend the doctrine of Mortensen beyond its facts. In Masse v. United States, 210 F.2d 418 (5 Cir. 1954), cert. denied 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105, the defendant transported a girl from New York to Florida where they lived in open concubinage. His stated intention was to establish a domicile there in order to get a Florida divorce from his spouse

---

1. The Hon case drew a vigorous dissent, and seems to stand alone even in the Seventh Circuit. In United States v. Nichol, 323 F.2d 633 (7 Cir. 1963), the defendant set his wife up in Missouri as a prostitute; they went to Illinois and thereafter returned to resume prostitution. The conviction of violation upon the return trip was upheld; the court found no evidence that the trip was innocent when it began, thus precluding the application of the "innocent round

trip" doctrine of Mortensen. In United States v. Eddington, 328 F.2d 760 (7 Cir. 1964), there was evidence that when the prostitute left Quincy, Illinois, she did not intend to return. It was held that there was sufficient evidence that the jury could find that the trip from Koontz Lake, Indiana, to Quincy, Illinois, was for the "independent purpose" of prostitution, rather than merely the return leg of an originally innocent journey.

351

so he could marry the girl. In affirming conviction, this court found the defendant to have had a sufficiently immoral purpose:

"We think it equally clear on this record that the evidence is sufficient to sustain the conviction of Masse. The evidence of defendant's unlawful cohabitation with the girl in Illinois, their similar intimacy at Lake City, coupled with the evidence of their adultery at Panama City, adequately supports the conclusion that from the beginning at least *one of the purposes* was illicit intercourse. The White Slave Traffic Act does not require that the interstate transportation need be solely for immoral purposes, *if such purpose constitutes one of the reasons for the transportation.* Dunn v. United States, 10 Cir., 190 F.2d 496; Daigle v. United States, 1 Cir., 181 F.2d 311; Mellor v. United States, 8 Cir., 160 F.2d 757." (Emphasis added) 210 F. 2d at 421.

And in Nunnally v. United States, 291 F.2d 205, 208 (5 Cir. 1961), we said:

"The second direct contention is that the proof shows that Sherry came to Montgomery, not to practice prostitution, but with the help of the defendant who promised to put in a good word to obtain employment as a strip dancer in a local club in Montgomery. She stresses Mortensen v. United States, * * *. Of course, prostitution or such immoral purpose need not be the sole motive for the interstate trip. *It is sufficient if it is one of the principal purposes.* [Citing cases.] Sherry, while stating that there had been talk about defendant assisting in helping her obtain employment as a dancer, was categorical that defendant urged her to come to Alabama to ply the trade as a prostitute. This is, of course, what she did. The question of

motive of the transportation was for the jury." (Emphasis added)

See also Dunn v. United States, 318 F.2d 89 (5 Cir. 1963).

Our views accord with the court in Dingess v. United States, 315 F.2d 238 (4 Cir. 1962), cert. dismissed 373 U.S. 947, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963). There defendant transported several girls who practiced prostitution from West Virginia into Ohio and other states, but he claimed the purpose of his trips was to secure employment for himself. In affirming his conviction the court, in a footnote discussion of the "dominant purpose" doctrine of *Mortensen,* supra, said that a delineation between dominant and subordinate purposes " * * * may be quite inappropriate in the context of such a case as this, where the defendant may have had a dual purpose, one lawful, the search for employment for himself, and the other unlawful, the unreserved prostitution of his female companion. Transportation of the female for the latter purpose would seem proscribed though her transporter may have had a concurrent purpose, enjoyment of scenery, a visit with a relative or investigation of legitimate employment opportunities." 315 F.2d at 240.[2]

In the case here presented the evidence is sufficient to support the fact finder's determination that the interstate transportation of the women was "for the dual purpose of taking a vacation and for the girls to fill dates of prostitution." There is ample evidence that all four of the vacationers discussed the opportunities the three women might have to earn expense money on the trip. The only change from the usual order of business seems to have been that neither appellant nor "Nancy" would collect forty percent for the "house."

2. See also United States v. Salter, 346 F.2d 509, 511 (6 Cir. 1965) (conviction upheld where defendant had dual purpose in transportation: "It was not necessary to prove that the interstate transportation was for the sole purpose of prostitution. It is sufficient if prostitution was only one of the dominant purposes.").

There was conflicting testimony concerning the prior arrangements by telephone with a person in Pensacola. Appellant urges that the government's evidence as to the telephone call was legally insufficient in that the only documentary evidence of such was a telephone company bill showing a call originating from appellant's apartment, to Gulf Breeze, Florida, a suburb of Pensacola, on April 27, 1964, some seven days after the group returned to Birmingham, as evidenced by a motel bill paid by appellant on April 20, 1964. We agree this inconsistency creates a negative inference as to whether any such call was made prior to the interstate trip, but at the same time agree with the trial court that the evidence preponderates that such a call was made by appellant prior to the commencement of the trip. Two of the government's witnesses, "Nancy" and one of the girls, testified unequivocally that appellant made such a call; all three of the women testified, uncontradicted by appellant who merely stated he could not recall, that the four vacationers had discussed at length the prior telephonic arrangement that the girls would "date" in Pensacola.

Taken as a whole, the evidence that such a call was made, when added to the other evidence of prior planning, clearly supports a finding that the intent or purpose to facilitate acts of prostitution was present in appellant's mind at or prior to the inception of the interstate transportation.

Admittedly, appellant came to Pensacola with several purposes in mind in addition to recreation and facilitation of the girls' immoral acts: to introduce "Nancy," whom he planned to marry, to a friend; to show off his new car; and to follow up on a business deal. But the conclusion is inescapable that recreation and prostitution were the predominant ones.

Therefore, it is our judgment that the trial court's conclusion that "one purpose" of the trip was for prostitution is not erroneous, as it finds substantial basis in this record. The conclusion is not insufficient under the jurisprudence, as contended by appellant. See especially Masse v. United States, supra, and Nunnally v. United States, supra. Whether it would have been more accurate or meaningful for the trial court's conclusion of law to have been couched in terms of "compelling," "efficient," or "principal" purpose, or "one of the dominant purposes," we need not concern ourselves. We conclude merely that on this record appellant's purpose was adequate in law to sustain his conviction.

For the reasons assigned the judgment of the district court is affirmed.