**UNITED STATES of America,
Plaintiff and Appellee,**

v.

**Joe Glennis WHEELER, Defendant
and Appellant.**

No. 632–70.

United States Court of Appeals,
Tenth Circuit.

June 25, 1971.

Robert Van Sciver, Salt Lake City, Utah, for defendant and appellant.

C. Nelson Day, U. S. Atty., and James F. Housley, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff and appellee.

Before PICKETT, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Appellant Joe Glennis Wheeler and Jake Chess were convicted on an indictment charging that on or about July 1, 1969, they did knowingly and willfully transport and cause to be transported in interstate commerce, to wit, from Spokane, Washington, to Salt Lake City, Utah, four women for the purpose of prostitution in violation of Title 18 U.S. C.A. § 2421. Wheeler's main contentions on appeal are that (a) improper instructions were given to the jury; and (b) the evidence is insufficient to support conviction.

 Title 18, U.S.C.A. § 2421, popularly known as the Mann Act, deals with the transportation of women in interstate commerce for the purpose of prostitution or other immoral purposes. The Act was created to curb white slave traffic in interstate commerce and to eliminate traffic in women by procurers who forced victims to lead a life of debauchery. Forrest v. United States, 363 F.2d 348 (5th Cir. 1966), cert. denied 386 U.S. 995, 87 S.Ct. 1315, 18 L.Ed.2d 343 (1967).

### Facts

Toward the end of June, 1969, Wheeler drove from Salt Lake City, Utah, to Spokane, Washington with Chess in Chess's car. In Spokane they met Janet Anderson at Sam's Barbecue Pit where she was working as a prostitute. Chess stayed one night with her. She gave him some of the money she had received as a prostitute. Wheeler and Chess also met Marlene Kellis, a prostitute, and Ada Jones (Mitchell) and Sylvia Emery, runaways from the Good Shepherd Home in Spokane. Marlene, Ada and Sylvia lived for a while with Wheeler, Chess, and another man.

Wheeler, in a conversation with Janet Anderson, Chess, and another man, stated he had a night club in Salt Lake City and that prostitutes were making good money there. Wheeler said he would take Janet to Salt Lake City to see his club. In conversations between three of the women and Chess, during which Wheeler was present some of the time, they discussed having the women go with the co-defendants to Salt Lake City, how prostitution worked, and how to perform as a prostitute.

Wheeler and Chess stayed in Spokane several days and then took the four women to Salt Lake City in Chess's car. During the trip they discussed what was happening on West South Second, Salt Lake City, an area known to prostitutes, the money prostitutes made there, and the night club. They arrived in the early part of July. After they arrived in Salt Lake City, three of the women engaged in prostitution in the West South Second area. They gave the money they re-

ceived to Chess. The evidence is not clear whether the fourth woman engaged in prostitution at the same time. Janet Anderson stayed in several hotels and lived with Chess for a while. Chess paid for her rooms at two hotels.

Marlene Kellis and Ada Jones (Mitchell) stayed for a few days at Wheeler's apartment and then stayed in a hotel with Janet Anderson. Sylvia Emery lived at a motel for a week and then moved in with Wheeler at a hotel. They registered as Mr. and Mrs. Wheeler.

Ada Jones (Mitchell) testified that Sylvia Emery worked as a prostitute and that she gave the money she made to Wheeler. Janet Anderson, Marlene Kellis, and a police detective testified that they believed Sylvia worked as a prostitute.

### "Purpose" Element of Mann Act

 The appellant relies on Mortensen v. United States, 322 U.S. 369, 64 S. Ct. 1037, 88 L.Ed. 1331 (1944) in which the defendants owned a house of prostitution in Nebraska and took two of the prostitutes to Utah for a vacation. The defendants were convicted under the Mann Act. The United States Supreme Court reversed the conviction, holding that it was an innocent trip. The fact that the girls returned to prostitution after the trip was not deemed relevant. The appellant relies on the following language from that case:

> "An intention that the women or girls shall engage in the conduct outlawed by Section 2 must be found to exist before the conclusion of the interstate journey and must be the dominant motive of such interstate movement. And the transportation must be designed to bring about such result. Without that necessary intention and motivation, immoral conduct during or following the journey is insufficient to subject the transporter to the penalties of the Act." 322 U.S. at 374, 64 S.Ct. at 1040.

Wheeler contends that the accused must be personally motivated by an intent to transport women across a State line to engage in prostitution and that the alleged purpose of the women to engage in prostitution in Utah cannot be imputed to him even though he transported them knowing of their purpose.

The *Mortensen* case is distinguishable from the case at bar. In *Mortensen, supra,* the sole purpose of the trip was recreation. Here the sole purpose of the trip for the four women was that of engaging in prostitution in Salt Lake City. Courts have refused to extend *Mortensen* beyond its facts. Forrest v. United States, 363 F.2d 348 (5th Cir. 1966), cert. denied 386 U.S. 995, 87 S.Ct. 1315, 18 L.Ed.2d 343 (1967), *supra.* Our fact situation is similar to that in *Forrest, supra.* In that case the defendant traveled with some girls on a vacation to Florida and then returned to Alabama to resume prostitution. The Court held that the journey was for the dual purpose of recreation and prostitution even though the defendants were not to collect from the prostitutes' earnings on the trip. Since one of the purposes of the trip was for the purpose of prostitution and that purpose was in the minds of the appellants at the inception of the journey, the Court upheld their convictions.

 In Cleveland v. United States, 329 U.S. 14, 17, 67 S.Ct. 13, 91 L.Ed. 12 (1946) the Court stated that:

> "While Mortensen v. United States, *supra* [322 U.S.] p. 377 [64 S.Ct. 1037], rightly indicated that the Act was aimed 'primarily' at the use of interstate commerce for the conduct of the white slave business we find no indication that a profit motive is a *sine qua non* to its application."

Thus, even though Wheeler may not have received any proceeds from the women's practice of prostitution, either on the trip or in Utah, such proof is not necessary for a conviction under the Act. The purpose may be proved by circumstantial evidence, with consideration being given to the conduct of the parties within a reasonable time before and after the transportation. Dunn v. United States, 190 F.2d 496 (10th Cir. 1951).

A person is presumed to intend the natural consequences of his acts. United States v. Fleenor, 162 F.2d 935 (7th Cir. 1947). If the jury found, as it did, that Wheeler knew the four women were practicing prostitutes and that he transported them interstate, then the natural consequence of his action would be that they would engage in prostitution after their arrival, which they did. The purpose element of the Act may rest with an inference. The intent of the appellant was a question of fact for the jury. It may be proven by circumstantial evidence. United States v. Ebey, 424 F.2d 376 (10th Cir. 1970); VanNattan v. United States, 357 F.2d 161 (10th Cir. 1966); Stewart v. United States, 311 F.2d 109 (9th Cir. 1962).

There is substantial evidence to support the jury's verdict that Wheeler had the required "purpose of prostitution" in his mind before he transported the women across State lines. Wheeler discussed the possibility of prostitution in Salt Lake City with the four women before leaving Spokane. The requirement that the transportation be for the "purpose of prostitution" was met when Wheeler transported the women to Utah from Washington with the knowledge that they intended to engage in prostitution in Salt Lake City. Cleveland v. United States, *supra*; Gates v. United States, 122 F.2d 571 (10th Cir. 1941), cert. denied 314 U.S. 698, 62 S.Ct. 478, 86 L.Ed. 558 (1941).

### The Supplemental Instruction

■ Wheeler contends that the court committed prejudicial error in giving an additional instruction to the jury in response to a jury inquiry. The jury asked the following question:

"If one knowingly takes a prostitute across a state line, is he guilty?"

No objections were made by defense counsel after the instructions were given and before the jury retired as required by Rule 30 of the Federal Rules of Criminal Procedure. Thus the court will not consider error in the instructions on appeal unless they are clearly prejudicial and erroneous. See Osborn v. United States, 391 F.2d 115 (10th Cir. 1968); Edwards v. United States, 374 F.2d 24 (10th Cir. 1966), cert. denied 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967); Felton v. United States, 344 F.2d 111 (10th Cir. 1965).

■ Wheeler contends that the Court's additional instruction created the impression that the jury could find him guilty without finding that he violated the purpose element of Section 2421. Wheeler, on appeal, objects to the additional instruction in which the Court stated in part:

"Now, if the Government's proof satisfies you beyond a reasonable doubt that *they* are prostitutes and that *they* were knowingly and wilfully transported across a state line, the fact that *they* are prostitutes, if that is established beyond a reasonable doubt to your satisfaction, is one fact in the case, one circumstance in the case, from which you can draw inferences about *their* state of mind, that is, whether or not it was for the purpose of prostitution down there." Tr. page 164.

Wheeler contends that if "they" and "their" are interpreted to apply to the women, then the jury could have found him guilty if satisfied simply that he knew the women were prostitutes and that he transported them across a state line. Wheeler's argument is without merit. We hold that the instructions, taken in context, convey no such impression.

■ The trial court specifically informed the jury in its additional instruction that it must find beyond a reasonable doubt that Wheeler had the "purpose of prostitution" in mind. The Court required the jury to find beyond a reasonable doubt that all three elements of the crime were committed by Wheeler in that (1), he knowingly and wilfully (2) transported in interstate commerce these women (3) for the purpose of prostitution. The Court properly instructed the jury that it might draw an inference on

the third element if it found, beyond a reasonable doubt, that the women were prostitutes, that the defendants had knowledge of this fact, and that the defendants had transported the women, knowingly and wilfully in interstate commerce. In determining the propriety of a supplemental instruction given the jury, the instructions have to be considered as a whole and the supplemental instruction examined in the light of the other instructions previously given. Beckstead v. United States, 272 F.2d 571 (10th Cir. 1959). When the instructions are viewed as a whole, it is clear that the trial court did not suggest that Wheeler would be guilty simply because the four women were prostitutes and were transported in interstate commerce, as Wheeler suggests. The instructions taken as a whole, did not mislead the jury. See also Devine v. United States, 403 F.2d 93 (10th Cir. 1968), cert. denied 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969); Sykes v. United States, 312 F.2d 232 (8th Cir. 1963), cert. denied 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698 (1963). We hold there was no prejudice to the appellant.

### Sufficiency of Evidence

Wheeler alleges that the evidence is insufficient to sustain conviction and that the jury's verdict could only be based on speculation. He contends that the trip was a joint venture and that the four women's purpose of prostitution cannot be imputed to him. He contends that he was merely returning home to Salt Lake City. He claims that the testimony was at best marginal that one of the women worked as a prostitute in Utah and that it was based upon opinion or hearsay evidence which should have been stricken from the record. The record belies this contention.

The jury properly found the purpose element to have been established beyond a reasonable doubt. Any examination which this court makes of the evidence and inferences will be viewed in a light favorable to the prosecution. Bailey v. United States, 410 F.2d 1209 (10th Cir.

1969), cert. denied Freeman v. United States, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969); Thomas v. United States, 409 F.2d 730 (10th Cir. 1969); O'Neal v. United States, 240 F.2d 700 (10th Cir. 1957). This court must determine, upon an examination of evidence and inferences reasonably drawn therefrom, whether the jury could find, as it did, beyond a reasonable doubt that Wheeler's purpose was that the women engaged in prostitution in Utah at the time the trip began at Spokane. Van-Nattan v. United States, supra; United States v. Ebey, supra; United States v. Reginelli, 133 F.2d 595 (3rd Cir. 1943), cert. denied 318 U.S. 783, 63 S.Ct. 856, 87 L.Ed. 1150 (1943).

Wheeler's conduct shows beyond a reasonable doubt that he took the four women to Utah for the purpose of prostitution. He conversed with the four women in Spokane and told them that prostitutes were making good money in Salt Lake City and that he would take them there to see his night club. He discussed with the women prostitution in Salt Lake City, the money that prostitutes were making there, and his night club during the journey to Utah. Upon arrival in Salt Lake City three of the women worked as prostitutes. Wheeler lived with the fourth woman. There was substantial evidence that the fourth woman also worked as a prostitute and that she gave her earnings to Wheeler. But whether or not all of the women worked as prostitutes is not controlling

"It is not an essential element of the offense that the defendant succeed in achieving his iniquitous end. United States v. Marks, [274 F.2d 15], supra. Indeed, it is enough to prove that the environment into which the victim is brought 'would necessarily and naturally lead to a life of debauchery of a carnal nature relating to sexual intercourse between man and woman.'" United States v. Austrew, 202 F.Supp. 816, 824 (D.C.Md.1962), affirmed 317 F.2d 926 (4th Cir. 1963). See also United States v. Sapperstein, 312 F.2d 694 (4th Cir. 1963); Athanasaw

v. United States, 227 U.S. 326, 33 S.Ct. 285, 57 L.Ed. 528 (1913).

■ The intent that Wheeler formed to transport these women in interstate commerce for the purpose of prostitution is a state of mind which is seldom possible to establish by direct proof; it is sufficient if proved by circumstantial evidence. United States v. Reginelli, *supra*; Tedesco v. United States, 118 F.2d 737 (9th Cir. 1941). In order to determine Wheeler's intent the jury considered his conduct within a reasonable time prior to, during, and after the transportation. United States v. Tyler, 424 F.2d 510 (10th Cir. 1970), cert. denied 400 U.S. 839, 91 S.Ct. 78, 27 L.Ed.2d 73 (1970); O'Neal v. United States, *supra*; Dunn v. United States, 190 F.2d 496 (10th Cir. 1951), *supra*. Prior to the journey to Utah Wheeler told the four women about the opportunities for prostitutes in Utah. After their arrival in Salt Lake City, Wheeler continued to associate with the women. He lived with one of them. The women delivered some of the proceeds from their earnings to Chess and, arguably, some to Wheeler. The jury properly inferred that Wheeler's intent in bringing the women to Utah was for the purpose of prostitution. Viewing this evidence in the light most favorable to the prosecution, the conclusion is inescapable that the record reflects sufficient evidence to support the jury verdict. Thomas v. United States, *supra*; Evans v. United States, 240 F.2d 695 (10th Cir. 1957); Seefeldt v. United States, 183 F.2d 713 (10th Cir. 1950).

### Trial Testimony

■■ Wheeler claims error in the admission of the testimony of Ada Mitchell in which she related that Sylvia gave proceeds from the practice of prostitution to him. He alleges that his motion to strike this testimony should have been granted by the trial court because the testimony was conclusory. However, it is within the discretion of the trial judge to allow the witness to testify on conclusions. Zimberg v. United States, 142 F.2d 132 (1st Cir. 1944), cert. denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573 (1944). The matters testified to were already before the jury. Therefore even if the denial of the motion was error, it was harmless.

Wheeler also objects to witness Ada's testimony about Sylvia walking the streets. The judge asked: "Was she hustling any of those fellows on the street or in the bar?" and Ada answered "Yes." Wheeler contends that the judge solicited this testimony from the witness by the use of a leading question and that such conduct was prejudicial.

■ The trial judge is allowed to participate in a trial and ask questions of witnesses in order to ascertain the facts. He cannot show hostility toward one side or become an advocate for one side. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); McBride v. United States, 409 F.2d 1046 (10th Cir. 1969), cert. denied 396 U.S. 938, 90 S.Ct. 282, 24 L.Ed.2d 240 (1969); Maguire v. United States, 358 F.2d 442 (10th Cir. 1966), cert. denied Giles v. United States, 385 U.S. 870, 87 S.Ct. 138, 17 L.Ed.2d 97 (1966). The record here reveals that the judge's question to the witness was for the sole purpose of clarifying the facts. The question was within the realm of the judge's discretion. It did not prejudice the rights of the accused. It was a leading question asked to clarify a point important in the search for truth. The trial court may ask a leading question. Riley v. Goodman, 315 F.2d 232 (3rd Cir. 1963). Since Wheeler failed to object to the question on "hustling" before the trial court, it cannot be raised on appeal unless it is plain error. Warden v. United States, 391 F.2d 747 (10th Cir. 1968); Nutt v. United States, 335 F.2d 817 (10th Cir. 1964), cert. denied 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180 (1964); Moreland v. United States, 270 F.2d 887 (10th Cir. 1959); Rule 30, 52(b) F.R.Cr.P., Title 18, U.S.C.A. The record discloses that the question about "hustling" posed by the court did not constitute plain error affecting the substantial rights of the appellant.

Wheeler also objects to the admission of testimony that he was at a place in Spokane called the "Pit". A witness testified that the "Pit" was a place where prostitutes worked. Wheeler objected. The court allowed the testimony. Wheeler claims that this was prejudicial error because inferences concerning his guilt could be drawn from his presence at the "Pit", and that the testimony amounted to hearsay. This testimony was not hearsay. The witness was not repeating a statement made out-of-court by a third person. The witness was telling that which she knew from her personal knowledge.

We affirm.