**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 94-10327
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JAMES LYNN CAMPBELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(April 3, 1995)

Before  SMITH, BARKSDALE, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


James Campbell appeals his conviction, after a jury trial, of two violations of the Mann Act, 18 U.S.C. §§ 2421-2424 (1988).  He contends that there was insufficient evidence to submit to the jury the issue of whether a dominant purpose of his travel was to engage in prostitution.  He also challenges several evidentiary rulings and the enhancement of his sentence, on account of the use of force during the offense, under U.S.S.G. §§ 2G1.1(b)(1) and 2G1.2(b)(1).  Because we find that there was sufficient evidence to support a finding of "purpose," that the district court's evidentiary rulings were not an abuse of discretion, and that the enhancement comported

with sentencing requirements, we affirm.

## I.

The facts here are as simple as they are sordid. Campbell began "dating" Lourena Wilkins, a drug user and prostitute, in the spring of 1993 after they met in Albuquerque, New Mexico. Thereafter, the two traveled from Amarillo, Texas, where they lived together, to Albuquerque and other nearby cities, where Wilkins would prostitute herself. Campbell assisted Wilkins with her profession and provided her with drugs. Campbell, through his powers of persuasion and access to drugs, later became involved with a fifteen-year-old girl, "MRH," who exhibited extremely poor judgment by befriending Campbell.

Shortly after Campbell and MRH met, they and Wilkins decided to travel to Albuquerque, ostensibly to visit Wilkins's child, who resided in that city. MRH, who claimed she did not know Wilkins was a prostitute, simply wanted to go along for the ride. The trip, however, turned rough at times, when Campbell would lose his temper and strike MRH and Wilkins. At other times, they indulged in drugs and alcohol.

In Albuquerque, after checking them into a motel, Campbell informed MRH that she would have to make some money for him as Wilkins did. If she did not, he threatened that she would get more of the same rough treatment.

At first, MRH refused. Campbell and Wilkins, however, gave MRH a demonstration of what she would have to do. Then Campbell

2

proceeded to have sex with MRH. Wilkins and MRH then hit the streets.

For a time, the three eked out a living in the city, though not without some difficulties. MRH and Wilkins were arrested at different times for prostitution, but no serious repercussions followed. Campbell also would hit them when he was angry and threatened MRH so she would not report him to the police. Finally, however, a call from MRH to her mother led to Campbell's arrest.

Campbell was charged with violations of 18 U.S.C. § 2421[1] (transportation generally) and 18 U.S.C. § 2423[2] (transportation of minors). After a jury trial, he was convicted on both counts. The district court sentenced him to serve 60- and 115-month concurrent sentences, with a three-year term of supervised release.

## II.

## A.

Campbell first challenges the denial of his motion for acquittal. He argues that the evidence was insufficient to allow a

---

[1] § 2421. Transportation generally

    Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than five years, or both.

[2] § 2423. Transportation of minors

    Whoever knowingly transports any individual under the age of 18 years in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than ten years, or both.

reasonable jury to find that his "dominant" purpose in traveling was to engage in prostitution. Our standard of review for such challenges is well-established: We ask whether, "viewing the evidence and the inferences therefrom in the light most favorable to the government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." United States v. Willis, 38 F.3d 170, 178 (5th Cir. 1994) (quoting United States v. Trevino, 720 F.2d 395, 398 (5th Cir. 1983)), petition for cert. filed (Mar. 20, 1995).[3]

To establish a violation of the Mann Act, one of the essential elements is that the defendant transported his victim with the intent that she engage in prostitution. While this intention to engage in illicit activity must be a "dominant motive" of such a trip, Mortensen v. United States, 322 U.S. 369, 374 (1944), this circuit has interpreted this phrase narrowly, allowing prosecution when a defendant had several purposes for the travel. We have stated that

> it is not necessary to a conviction under the Act that the sole and single purpose of the transportation of a female in interstate commerce was such immoral practices. It is enough that one of the dominant purposes was prostitution or debauchery. It suffices if one of the efficient and compelling purposes in the mind of the accused in the particular transportation was illicit conduct of that kind. The illicit purpose denounced by the Act may have coexisted with other purpose or purposes, but it must have been an efficient

---

[3] The government incorrectly argues that the issue is whether the evidence of Campbell's intent supporting the conviction is sufficient. Campbell in fact is challenging the denial of his motion for acquittal. In any case, for our purpose here, the standard is the same. See United States v. Montoya-Ortiz, 7 F.3d 1171, 1172-73 (5th Cir. 1993) (stating sufficiency of evidence review standard).

4

and compelling purpose.

Forrest v. United States, 363 F.2d 348, 349 (5th Cir. 1966) (quoting Dunn v. United States, 190 F.2d 496, 497 (10th Cir. 1951)), cert. denied, 386 U.S. 995 (1967).

There is little question that a jury could find beyond reasonable doubt that one of Campbell's dominant purposes in transporting the women was illicit activity. Campbell had traveled before with Wilkins to cities where she would engage in prostitution. He actively furthered her "work." His act of befriending MRH fairly could be called recruitment. His actions upon arriving in New Mexico are consistent with a plan of forcing MRH into the life of a prostitute. In sum, the evidence was sufficient for a reasonable jury to find that a purpose of the trip was to engage in prostitution.

Campbell questions whether a "dominant" purpose can exist under the Mann Act when an equally compelling but innocent purpose for traveling exists. This argument is based upon Campbell's assertion that Wilkins's visit was motivated at least equally by the desire to visit her child. We again reject))as we have long rejected))this line of arithmetic hairsplitting. The "dominant" requirement does not impose a "but for" limitation on the defendant's intent.

In determining whether a "dominant purpose" exists, we instead ask whether the illicit behavior is "one of the efficient and compelling purposes" of the travel. Forrest, 363 F.2d at 349. Accordingly, many purposes for traveling may exist, but, as long as

5

one motivating purpose is to engage in prostitution, criminal liability may be imposed under the Act. When no dominant purpose exists, it is because any such purpose was either non-existent or "incidental." See, e.g., Mortensen, 322 U.S. at 375 (sole purpose of travel was innocent holiday); United States v. Hon, 306 F.2d 52, 55 (7th Cir. 1962) (prostitution was not a purpose of trip, but incidental result);[4] Smart v. United States, 202 F.2d 874, 875 (5th Cir. 1953) (sole purpose of trip was to take care of legal matters in another state).

While it is true that Wilkins did have a child in the area, and they could have been traveling in order to visit the child, this fact is not inconsistent with the prostitution plan. A reasonable jury could find beyond a reasonable doubt that the group was traveling to New Mexico to visit Wilkins's daughter and engage in prostitution. Accordingly, the district court properly denied the motion for acquittal and allowed the jury to determine this question of fact.

B.

Campbell next argues that the court erred in allowing the prosecution to introduce, over the defendant's objections, irrelevant and prejudicial evidence on drug use and Campbell's

---

[4] Even this limited expansion of Mortensen suggested in Hon has been questioned seriously by the Seventh Circuit and this circuit. See United States v. Snow, 507 F.2d 22, 26 (7th Cir. 1974) (expressly disavowing Hon); Forest v. United States, 363 F.2d 348, 350 n.1 (5th Cir. 1966) ("The Hon case drew a vigorous dissent, and seems to stand alone even in the Seventh Circuit."), cert. denied, 386 U.S. 955 (1967).

violent outbursts. He also argues that the prosecutor made numerous improper comments in both his opening and closing statements, which the court should have excluded. The government counters by claiming that the evidence of drug use and violence was relevant intrinsic evidence of Campbell's relationship with the women and also extraneous FED. R. EVID. 404(b) evidence of his intent to use the relationship. It also argues that Campbell has taken parts of its closing and opening statements out of context, and considerable evidence supported its statement of facts or reasonable inferences drawn from these facts.

On the issue of the violence and drug use, the district court considered the motion <u>in limine</u> and determined that the evidence was admissible. The basic prosecution theory was that Campbell, at least in part, used drugs and violence to control the women and make them prostitute for him. As such, the court found that the evidence was relevant to how Campbell transported the women and what his intent was. Once the court determined that the evidence was relevant, a fact that Campbell does not challenge on appeal, the court determined that its probative value outweighed its prejudicial effect. We review this finding for abuse of discretion. <u>See</u> <u>United States v. Shaw</u>, 920 F.2d 1225, 1129 (5th Cir.), <u>cert. denied</u>, 500 U.S. 926 (1991).

The ruling was not an abuse of discretion. The evidence admitted showed that Campbell supported Wilkins in her drug use. A reasonable inference is that he used this "carrot" to induce or entice Wilkins into prostituting for him. Similarly, he lured MRH

7

with drugs as well as money and clothes.  On Campbell's acts of seemingly random violence, a reasonable inference is that they were the "stick."  Campbell used force to intimidate the women and make them think twice before turning him over to the police.  This evidence, while prejudicial, was highly important to the prosecution in light of Campbell's defense that his relationship was entirely innocent.  The incidents that happened during the course of the trip were, accordingly, relevant intrinsic evidence of how the actual violation occurred.

Such evidence not so closely related to the actual transportation of the women was admissible as "other crimes" evidence on Campbell's intent in traveling from Texas to Mexico, again a hotly disputed issue.  Rule 404(b) states that evidence of other crimes, wrongs, or acts "may . . . be admissible for other purposes [besides proving character] such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Here the court followed the procedure required by United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978), cert. denied, 440 U.S. 920 (1979), and, moreover, gave a strong jury instruction on the limited use of such evidence. It was not an abuse of discretion to admit such evidence.

Campbell cites numerous "errors" in the opening and closing arguments, most based upon the prosecutor's presentation and exposition of the government's view of the evidence.  Because Campbell failed to object to all but one of the statements, however, he must show "plain error."  See FED. R. CRIM. P. 52(b).

8

In order for the plain error doctrine to be applicable, we must find that (1) there was error, (2) the error was plain, and (3) it affects substantial rights.  United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc).   Only upon finding these elements may we, in our discretion, correct the error.  Id. at 164. In making that determination, we ask whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  Id. (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

For the one objection that Campbell made))that the government in its close improperly suggested Campbell's state of mind in "recruiting" MRH without building an evidentiary foundation))we ask whether the remarks were both "inappropriate and harmful."  United States v. Iredia, 866 F.2d 114, 117 (5th Cir.) (quoting United States v. Lowenberg, 853 F.2d 295, 301 (5th Cir. 1988), cert. denied, 489 U.S. 1032 (1989)), cert denied, 492 U.S. 921 (1989).

Campbell's claims are meritless.  The district court had decided, in limine, that it would allow proof relating to Campbell's violence and drug use with the women.  The prosecutor was allowed to mention this relevant and admissible evidence in his statements.  Contrary to Campbell's assertion on appeal, a fair reading of the prosecutor's remarks is that he either was summarizing the evidence as he saw it or was asking the jury to make logical inferences from that evidence.  The use of such statements was not error.

9

C.

Campbell asserts that the district court erred in limiting his cross-examination of MRH when he attempted to ask her about her sexual behavior before and after her encounter with Campbell. Campbell believes the court's limitation on the scope of the questioning violated his Sixth Amendment right of confrontation. The government argues that the cross-examination allowed was adequate, and Campbell has failed to show the deprivation of a substantial right.

We review limitations on the scope of cross-examination for clear abuse of discretion. United States v. Duncan, 919 F.2d 981, 988 (5th Cir. 1990), cert. denied, 500 U.S. 926 (1991). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Accordingly, "[t]he relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness." United States v. Tansley, 986 F.2d 880, 886 (5th Cir. 1993).

Here, the court was well within its discretion to find that behavior after the crime was of little relevance to MRH's prior activities. If anything, such activity was relevant only in the same sense that the "other crimes" evidence that occurred during the trip was probative; it was either inadmissible character

10

evidence or extrinsic evidence. The court did not abuse its discretion in finding that such evidence of actions occurring after the criminal acts was of insufficient relevance to be admitted as extrinsic proof.

Because such character evidence relating to events that occurred before the trip was potentially probative as extrinsic evidence, the court gave Campbell greater leeway on that line of questioning. The court stated that it "was not going to let you [Campbell] go into detail on her whole history, but I think the))I think that she has previous drug use, I think, is relevant, and that))I don't think you should go into it all, but you can ask her if she had previous sexual experience before." Campbell then proceeded to question MRH on these topics. Campbell's questioning was sufficient to allow a jury to appraise MRH's credibility as a witness.

D.

The final issue is whether the court erred in including a four-level increase in Campbell's offense level for sentencing because of the evidence of his violent outbursts directed at the women. In making its enhancement, the court relied upon U.S.S.G. §§ 2G1.1(b)(1) and 2G1.2(b)(1) (Nov. 1993), which state that "[i]f the offense involved the use of physical force, or coercion by threats or drug use or in any manner, increase by 4 levels." Campbell argues that the women's travel was not the result of coercion but was voluntary, and the violence was not part of the

11

offense.  The government argues that the physical violence that occurred was sufficiently related to the base offense to be considered "involved" under the sections.

Our standard of review mandates the result in this case:  We examine the sentence to ascertain whether it was imposed in violation of the law, as a result of a misapplication of the sentencing guidelines, or outside the guideline range and was unreasonable.  United States v. Fair, 979 F.2d 1037, 1040 (5th Cir. 1992), cert. denied, 114 S. Ct. 1374 (1994).  Findings of fact are accepted if they are not clearly erroneous.  Id.

Here, the court specifically found as a factual matter that Campbell used force during the trip to further his purpose in transporting the women across state lines for prostitution.  This finding, of course, is contrary to Campbell's argument that the violence was merely incidental to the underlying crime or occurred only after the alleged offenses were committed.  Nonetheless, sufficient evidence was presented to support the finding that Campbell began using violence during the trip in order to intimidate the women.  Once they had arrived in Albuquerque, the level of violence escalated, as Campbell used force and the threat of force to induce MRH into prostitution and prevent her from reporting him.  As the record supports the court's finding, it was not clearly erroneous.

Campbell, moreover, incorrectly argues that the physical force must be used to coerce.  See, e.g., U.S.S.G. §§ 2G1.1, comment. (n.3), 2G1.2, comment. (n.3) (defining "coercion" as "any form of

conduct that negates the voluntariness of the behavior of the person being transported").  The plain language of the sections requires only that "the offense involved the use of physical force . . . ."

Campbell's reading of the sections, however, confuses this first clause with the second clause, which allows an enhancement where "the offense involved . . . coercion by threats or drugs or in any manner . . . ."  Accordingly, Campbell's reading contradicts the well-established canon of construction named the "doctrine of the last antecedent," which requires that "qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote."  Quindlen v. Prudential Ins. Co., 482 F.2d 876, 878 (5th Cir. 1973);  see also General Motors Acceptance Corp. v. Whisnant, 387 F.2d 774, 778 (5th Cir. 1968) (holding that the canons of construction mandate that courts give effect, when ever possible, to all parts of a statute and avoid interpretation that makes a part redundant or superfluous).

Under our interpretation of these sections, an enhancement is justified if a court finds that the offense only "involved the use of physical force," even if the force was not used to coerce.[5]

---

[5] We note that one First Circuit case could be read to interpret § 2G1.1 differently.  In United States v. Sabatino, 943 F.2d 94, 104 (1st Cir. 1991), the court overturned a § 2G1.1 enhancement because, in part, the "violent acts were not used as coercive elements to force the girls to participate in the criminal venture."  This language suggests no distinction between use of force and coercion.  We find Sabatino easily distinguishable, however, as the court immediately qualified its statement:  "To the contrary, the only rational effect they could have had was to persuade the girls to abandon this line of work."  Id.  While not deciding the issue for this circuit, we thus read Sabatino to hold that where the defendant's violent acts are contrary to

13

Thus, if a Mann Act perpetrator physically restrained a strong-willed woman and transported her over state lines for the purpose of forcing her into prostitution, an enhancement would be justified even if the woman's spirit was never broken and she thus was not "coerced." Here, Campbell did not "coerce" his victims, but nonetheless, as found by the district court, he used force to further his scheme. We conclude that the enhancement of Campbell's criminal offense level was justified under the district court's factual findings and our interpretation of the guidelines.

AFFIRMED.

RHESA HAWKINS BARKSDALE, concurring:

I concur. But, in my opinion, it is most arguable that we should review the motion for acquittal/element of the offense issue only for plain error, because Campbell did not later object to the jury instruction on this point. *Cf*. **United States v. Graves**, 5 F.3d 1546, 1551-53 (5th Cir. 1993) (reviewing for plain error where defendant did not make contemporaneous objection to admission of evidence that was subject of earlier ruling on motion in limine).

---

furthering his Mann Act purposes, they can be said to be neither coercive nor of use to him. As this holding applies to both clauses of § 2G1.1, <u>Sabatino</u>'s application of that section is not predicated upon an interpretation different from the one we employ today.